# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

ADA MORALES,                  :
                                           :
             Plaintiff             :
                                           :
       v.                               :
                                           :      C.A. No. 12-301-M-DLM
BRUCE CHADBOURNE,           :
DAVID RICCIO,                   :
EDWARD DONAGHY, GREG       :
MERCURIO, ICE DOES 1-5,         :
RHODE ISLAND DOES 1-10,        :
ASHBEL T. WALL,                :
and the UNITED STATES,          :
                                           :
           Defendants       :

## AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND MONETARY DAMAGES

Plaintiff Ada Morales ("Plaintiff" or "Ms. Morales"), by and through her undersigned counsel, hereby alleges as follows, by and for her Complaint against the defendants named herein.

## Introduction

1. Plaintiff Ada Morales is a United States citizen of Guatemalan origin who naturalized over a decade ago, in 1995, and who resided in the United States as a lawful permanent resident for years prior to her naturalization. In 2009, despite her status as a U.S. citizen, state and federal officials in Rhode Island violated Ms. Morales's constitutional rights by illegally detaining her as a potentially deportable "alien."

2. This was not the first time Ms. Morales had been unlawfully imprisoned in Rhode Island. On at least one prior occasion, she was similarly jailed on the ground of unsubstantiated allegations that she was a deportable alien.

3.      On both these occasions, she was imprisoned based on an "immigration detainer," a document sent from federal immigration officials to Rhode Island officials requesting that the Rhode Island officials detain her for immigration purposes.

4.      Federal and state policies and procedures relating to immigration detainers, rather than adequately protecting against unconstitutional conduct, actually caused Ms. Morales's previous illegal detentions and put her at risk of being detained in the future.  Indeed, after her 2009 imprisonment Ms. Morales was told by a federal official that similar illegal seizures and detentions could happen to her again.

5.      To ensure she is no longer subject to illegal seizure and detention as a purportedly removable "alien" and to remedy her past injuries, Ms. Morales brings this action for damages and injunctive relief under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Rhode Island state law, and the Federal Tort Claims Act (FTCA).

## Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over Plaintiff's claims under the U.S. Constitution and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).  The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 (declaratory relief).  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7.      On May 2, 2011, Ms. Morales filed an administrative complaint with the federal government (attached as Exhibit A).  To date, she has received no response.  The federal government's failure to respond to her complaint is a constructive denial.  Ms. Morales has

PRV 1197144.1

therefore exhausted her administrative remedies for purposes of her claims against the United States under the FTCA. *See* 28 U.S.C. §§ 2675, 1346.

8. Venue is proper in this District under 28 U.S.C. § 1402(b) because the acts at issue in this lawsuit occurred within the District.

## Parties

9. Plaintiff Ada Morales is and was at all times relevant to this Complaint a resident of North Providence, Rhode Island.

10. Ms. Morales was born in Guatemala and became a U.S. citizen in 1995.

11. Since naturalizing, Ms. Morales has been unlawfully detained pursuant to an immigration "detainer" issued by U.S. Immigration and Customs Enforcement ("ICE") on at least two separate occasions, in violation of her rights under federal and Rhode Island law.

12. The first incident occurred in or around July 2004. Ms. Morales was arrested by the Cranston Police Department at a local K-Mart on charges that were ultimately dismissed. On information and belief, even though Ms. Morales was a U.S. citizen, ICE issued an immigration detainer indicating that she might be a non-citizen subject to removal, and local authorities responded by detaining her overnight. Her extended detention caused her to miss a flight she had scheduled to visit relatives in Guatemala and forfeit the airfare valued at approximately $3,000.

13. The second incident is the basis for the present lawsuit. It occurred in May 2009, when Ms. Morales was taken into custody on unrelated criminal charges, and ICE again lodged an immigration detainer against Ms. Morales. Although a judge ordered her released on $10,000 personal recognizance, the Rhode Island Department of Corrections refused to release her and held her in custody for over 24 hours beyond the time when she should have been released, based

solely on the immigration detainer. Ms. Morales was then taken into ICE custody, interviewed by ICE, and finally released the next day.

14. At the time of her release, an ICE official apologized to Ms. Morales for her wrongful detention. Ms. Morales said she was afraid that it would happen to her again. In response, the ICE official only reinforced Ms. Morales's fear, stating that it could happen again in the future.

15. Defendant Bruce Chadbourne is the Field Office Director of the Boston Field Office for ICE's Office of Enforcement and Removal Operations, which has responsibility over ICE operations in Rhode Island. The Boston Field Office is located at 10 New England Executive Park, Burlington, MA 01803. Defendant Chadbourne is sued in his individual and official capacity. On information and belief, Defendant Chadbourne is and was at all relevant times responsible for formulating, implementing, approving, and/or allowing policies and/or customs applicable to ICE's immigration enforcement activities in Rhode Island, including ICE's investigation of detainees in the custody of Rhode Island authorities; its issuance of immigration detainers with respect to such persons; its acquisition of custody over such persons; and its subsequent detention and treatment of such persons. On information and belief, Defendant Chadbourne is and was at all relevant times responsible for ensuring that ICE's policies, customs, practices, and activities in these areas accord with the U.S. Constitution and applicable federal law and regulations. On information and belief, Defendant Chadbourne also is and was at all relevant times responsible for training and supervising his staff, and has the power and authority to change policies or customs, to ensure that individuals detained because of ICE requests or other actions are detained pursuant to and in accordance with the U.S. Constitution

and applicable federal law and regulations. At all times relevant to this Complaint, Defendant Chadbourne acted or failed to act under color of federal law.

16. On information and belief, Defendant David Riccio was, at all relevant times, the Resident-Agent-in-Charge of ICE's Rhode Island Office, which is currently located at 1 International Way, Warwick, RI 02886. Defendant Riccio is sued in his individual and official capacity. On information and belief, Defendant Riccio was responsible for formulating, implementing, approving, and/or allowing policies and/or customs applicable to ICE's immigration enforcement activities in Rhode Island, including ICE's investigation of detainees in the custody of Rhode Island authorities; its issuance of immigration detainers with respect to such persons; its acquisition of custody over such persons; and its subsequent detention and treatment of such persons. On information and belief, Defendant Riccio was responsible for ensuring that ICE's apprehension, detention, and treatment of those detainees accord with the U.S. Constitution and applicable federal law and regulations. On information and belief, Defendant Riccio was also responsible for training and supervising his staff, and had the power and authority to change policies or customs, to ensure that individuals detained because of ICE requests or other actions are detained pursuant to and in accordance with the U.S. Constitution and applicable federal law and regulations. At all times relevant to this Complaint, Defendant Riccio acted or failed to act under color of federal law.

17. Defendant Edward Donaghy was at all relevant times an Immigration Enforcement Agent based in ICE's Rhode Island Office. Defendant Donaghy is sued in his individual and official capacity. Defendant Donaghy signed an immigration detainer against Ms. Morales and caused it to be transmitted to Rhode Island officials, thereby causing Ms. Morales's unlawful detention. On the detainer form, Defendant Donaghy listed Ms. Morales's

PRV 1197144.1

"nationality" as "Guatemala[n]" even though she is and was a U.S. citizen. Defendant Donaghy issued the detainer without probable cause or reasonable suspicion, and did not carry out a sufficient investigation into Ms. Morales's citizenship and immigration status. On information and belief, Defendant Donaghy issued the detainer against Ms. Morales on the basis of her race, ethnicity, and/or national origin. At all times relevant to this Complaint, Defendant Donaghy acted or failed to act under color of federal law.

18.     Defendant Greg Mercurio was at all relevant times an agent, employee, officer or otherwise a representative of ICE in ICE's Rhode Island Office. He is sued in his individual and official capacity. On May 4, 2009, Defendant Mercurio received a facsimile message from the Rhode Island Department of Corrections ("DOC") Records Unit stating that Ms. Morales was being held at the Rhode Island Adult Correctional Institutions ("ACI") *solely* on the basis of the immigration detainer that ICE had issued. Consequently, Defendant Mercurio knew or should have known that Ms. Morales was being held solely because of ICE's immigration detainer. On information and belief, Defendant Mercurio did not investigate or determine whether there was any lawful basis on which to imprison Ms. Morales. At all times relevant to this Complaint, Defendant Mercurio acted or failed to act under color of federal law.

19.     Defendants "ICE Does 1-5" are individuals whose identities are not currently known to Plaintiff, and who by their actions caused Ms. Morales's unlawful detention and violations of her rights. Upon information and belief, they are and were at all relevant times agents, employees, officers or otherwise representatives of ICE. They are sued in their individual and official capacities.

PRV 1197144.1

20.     At all times relevant to this Complaint, Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 were acting within the scope and course of their employment with ICE, an executive agency of the United States.

21.     Defendants "Rhode Island Does 1-10" are individuals whose identities are not currently known to Plaintiff and who by their actions caused Ms. Morales's unlawful detention and violations of her rights.  They are sued in their individual and official capacities. Upon information and belief, they are and were at all relevant times agents, officers, employees, or otherwise representatives of the Rhode Island State Police ("State Police"), the Rhode Island Department of Public Safety, or the Rhode Island Department of Corrections ("DOC").  The DOC operates and is responsible for the Rhode Island Adult Correctional Institutions ("ACI"), located at the Pastore Government Center Complex in Cranston, Rhode Island, where Ms. Morales was detained.

22.     Defendant Ashbel T. Wall II is and was at all relevant times the Director of the Rhode Island DOC.  He is sued in his individual and official capacity.  Defendant Wall operates, supervises, and manages the ACI.  Defendant Wall is responsible for formulating, implementing, or allowing policies and/or customs applicable to the ACI, including ensuring that all detainees are lawfully detained under the U.S. Constitution and applicable laws.  Defendant Wall is responsible for training and supervising ACI staff, and also has the power and authority to change policies or customs, to ensure that those detainees are held in accordance with the U.S. Constitution and applicable laws.  At all times relevant to this Complaint, Defendant Wall acted or failed to act under the color of state law.

PRV 1197144.1

<u>**Facts**</u>

**A.**     <u>**Defendants Unlawfully Imprisoned Ms. Morales, a U.S. Citizen, for Immigration Purposes**</u>

23.     Plaintiff Ada Morales was born in Guatemala and has lived in the United States since the 1980s. Ms. Morales was a lawful permanent resident until September 11, 1995, when she became a U.S. citizen through naturalization.

24.     Ms. Morales is married to a lawful permanent resident, Mr. Hugo Morales Vargas. Ms. Morales has five children, all of whom are U.S. citizens.

25.     Ms. Morales speaks both English and Spanish. She speaks English with an accent. She is and appears to be Hispanic.

26.     On the afternoon of Friday, May 1, 2009, Ms. Morales was playing with her children in her front yard when officers from the Rhode Island State Police arrived and arrested her on a warrant for criminal charges relating to alleged misrepresentations in a state public benefits application. Ms. Morales's charges have been resolved and Ms. Morales remains on probation.

27.     Ms. Morales was transported to an office of the State Police. Defendant Rhode Island Doe 1, a State Police officer, fingerprinted her and asked her questions, including where she was born and whether she was "legal." Ms. Morales answered that she was born in Guatemala and that she was a U.S. citizen.

28.     On or around the evening of Friday, May 1, 2009 or the morning of Saturday, May 2, 2009, Ms. Morales was transported to the ACI and booked into custody. Ms. Morales was not brought before a judge or other neutral adjudicator on this date, but instead was held at the ACI over the weekend.

PRV 1197144.1

29.     On information and belief, Defendants Rhode Island Does 1-10 reported Ms. Morales's information to ICE, even though they did not have reason to believe she was a non-citizen subject to removal and detention, and even though they could easily have confirmed that Ms. Morales was a U.S. citizen.  On information and belief, Defendants Rhode Island Does 1-10 relayed Ms. Morales's name, place of birth, and other information to ICE Defendants because of her race, ethnicity, and/or national origin.  On information and belief, Rhode Island Does 1-10 would not have relayed Ms. Morales's information to ICE had it not been for her race, ethnicity, and/or national origin; nor would they have disregarded her assertion that she was a U.S. citizen had it not been for her race, ethnicity, and/or national origin.

30.     On information and belief, Defendants Rhode Island Does 1-10 never notified Ms. Morales that they were sending her information to ICE or gave her an opportunity to present evidence of her U.S. citizenship.

31.     On Monday, May 4, 2009, at 8:32 a.m., over two days after Ms. Morales was initially taken into custody, ICE faxed an immigration detainer to the ACI (attached as Exhibit B).  Immigration detainers, printed on ICE Form I-247, are documents issued by ICE to notify state or local law enforcement officials that ICE is interested in an individual who is in state or local custody at the time, and that ICE may seek to take that individual into custody for deportation purposes once state or local custody ends.

32.     The immigration detainer issued by ICE provided Ms. Morales's name in the field labeled "[n]ame of alien," stated that her "[n]ationality" was "Guatemala[n]," and stated that an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States."

PRV 1197144.1

33.     The immigration detainer further informed the ACI that "[f]ederal regulations (8 C.F.R. § 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sunday's [sic] and Federal holidays) to provide adequate time for DHS to assume custody of the alien."

34.     On information and belief, Defendant Donaghy signed the unlawful immigration detainer and faxed it to the ACI.  On information and belief, Defendant Donaghy issued the immigration detainer against Ms. Morales with the intention and expectation that the detainer would prevent Ms. Morales's release from ACI custody.

35.     Defendant Donaghy issued the detainer without probable cause, and despite the fact that Ms. Morales is and was at all relevant times a U.S. citizen, not an "alien."

36.     The detainer's space for a "file number" was blank and the document did not provide an Alien Registration Number or Alien File Number for Ms. Morales.

37.     No ICE official interviewed Ms. Morales before the detainer was issued.  Nor did any ICE official ask Ms. Morales whether she was a U.S. citizen, or request or verify any documentation relating to her citizenship.

38.     Defendant Donaghy failed to sufficiently investigate Ms. Morales's immigration status before issuing the detainer.  Instead, on information and belief, Defendant Donaghy assumed without sufficient legal cause that Ms. Morales was not a U.S. citizen, and incorrectly listed Ms. Morales's "nationality" as "Guatemala[n]" in the detainer form.  On information and belief, he made this assumption based on her race, ethnicity, and/or national origin (as indicated by her place of birth, Spanish surname, and/or other information transmitted from Rhode Island Defendants and/or maintained in ICE's files).  On information and belief, Defendant Donaghy

-10-

would not have assumed that Ms. Morales was an "alien" without conducting further research had it not been for her race, ethnicity, and/or national origin.

39. On information and belief, Defendant Donaghy could have easily conducted further research to verify whether Ms. Morales was a U.S. citizen, but he failed to do so.

40. For example, when Ms. Morales became a U.S. citizen through the naturalization process in 1995, she submitted an application to the federal immigration authorities and passed a citizenship examination. On information and belief, the federal immigration authorities maintain records of naturalization applications in their databases. In addition, ICE had subjected Ms. Morales to a detainer once before, in 2004, and released her after confirming that she was a U.S. citizen; ICE therefore had information in its possession about Ms. Morales's citizenship. ICE could easily have accessed the information in its possession and confirmed that Ms. Morales was a U.S. citizen before subjecting her to a detainer in 2009.

41. When ICE issued and faxed the immigration detainer to the ACI at 8:32 a.m. on Monday, May 4, 2009, none of the defendants notified Ms. Morales or provided her with a copy.

42. Later that day, Monday, May 4, 2009, Ms. Morales was brought before General Magistrate Judge Patricia L. Harwood of the Rhode Island Superior Court.

43. At the arraignment, Judge Harwood told Ms. Morales, "I am going to withdraw the warrant and release you on $10,000 personal recognizance."

44. Judge Harwood also informed Ms. Morales that "[y]ou do have an immigration hold, so once you resolve that issue, you do have to report over [to] the Attorney General's Office, the [Bureau of Criminal Identification] Unit, for routine processing in this matter which will include fingerprinting."

45.    This was the first time Ms. Morales learned that an immigration detainer had been lodged against her.  Ms. Morales protested, informing Judge Harwood that she was a U.S. citizen.  Ms. Morales's husband was present in the courtroom and offered to show a copy of Ms. Morales's passport as proof of Ms. Morales's U.S. citizenship.  However, on information and belief, Judge Harwood stated that Ms. Morales's objections were beyond her jurisdiction and that Ms. Morales would have to address the issue with the immigration authorities.

46.    At this time, Ms. Morales was eligible for release from Rhode Island state criminal custody and should have been released because no lawful authority existed for any continued detention.  Yet, despite the Judge's order that she be released, Rhode Island Defendants refused to release Ms. Morales solely because of the immigration detainer that ICE had issued.  Instead, they returned her to the ACI.

47.    When she arrived back at the ACI, Ms. Morales was subjected to a humiliating strip search upon being re-booked into the facility.

48.    By depriving Ms. Morales of her liberty, Rhode Island Defendants effected an unreasonable seizure of Ms. Morales in violation of the Fourth Amendment.

49.    Ms. Morales protested her continued detention and told Defendants Rhode Island Does 1-10 that she was a U.S. citizen and that her husband had her passport as proof of her U.S. citizenship.  Yet Defendants Rhode Island Does 1-10 deprived Ms. Morales of her liberty while refusing to consider any evidence of Ms. Morales's citizenship or to provide her with any opportunity to respond to the erroneous and baseless allegations in the immigration detainer.  On information and belief, Rhode Island Does 1-10 would not have disregarded Ms. Morales's assertions that she was a U.S. citizen, or would at least have allowed her to present proof of her citizenship, had it not been for her race, ethnicity, and/or national origin.

-12-

50.     At 4:20 p.m. on Monday, May 4, 2009, Deb Sherrill, an employee of the Rhode Island DOC Records Unit, faxed Defendant Greg Mercurio a notice, stating: "Below is the name of an inmate [Ada Morales] who no longer has state charges pending. An Immigration Detainer is the only document holding this inmate at the Department of Corrections. Please contact the Records Unit with any information you may have pertaining to this inmate." The fax listed the "Charge Disposition" as "Case Release," and stated on the bottom in bold, "PLEASE PICK UP 5-5-09."

51.     Upon receiving this notice, Defendant Mercurio knew or should have known that Ms. Morales was being unlawfully detained "only" on the purported authority of the immigration detainer. Nonetheless, Defendant Mercurio caused Ms. Morales to remain unlawfully incarcerated at the ACI. On information and belief, Defendant Mercurio, as an ICE employee, was in a position to take remedial action in Ms. Morales's case, including further investigating the basis for the unlawful detainer and contacting officials at the ACI to lift the detainer.

52.     On information and belief, no ICE official took action on that day, Monday, May 4, 2009, to perform additional investigation, cancel the detainer, or give Ms. Morales an opportunity to respond, causing Ms. Morales to remain imprisoned for an additional day.

53.     The conditions of Ms. Morales's confinement were punitive and caused her serious harm.

54.     While jailed, Ms. Morales was denied access to her medications, including pills for depression. She asked DOC officials for her medication, but they refused to help her, telling her that she had no such "privileges" while in jail. This deprivation of her basic medical needs caused Ms. Morales pain, suffering, and emotional and physical distress by denying her needed

-13-

treatment for depression, and by causing her to experience symptoms of withdrawal from her medication.

55. Moreover, Ms. Morales was harassed by DOC officials on account of her immigration detainer. DOC officials were verbally abusive and taunted her, accusing her of lying about her U.S. citizenship.

56. Ms. Morales was also verbally harassed and physically intimidated by other detainees, causing her to fear for her safety, making her feel depressed and anxious, and causing her insomnia for a significant period of time after her detention.

57. The following day, on May 5, 2009, Ms. Morales was taken into ICE custody and transported to an ICE office in Rhode Island.

58. Ms. Morales was handcuffed and placed into the back of a van with several other passengers during the trip to the ICE office. Neither she nor the other passengers were secured into their seats by seatbelts. The van was operated recklessly and dangerously, with deliberate indifference to the safety of the passengers, and caused Ms. Morales and the other passengers to slide and hit fixtures and one another. Because of the van's reckless operation, Ms. Morales feared for her life and was physically injured with bruises.

59. At the ICE Rhode Island Office, Ms. Morales was interviewed by Defendants ICE Does 1-5.

60. During her interview, Ms. Morales informed Defendants ICE Does 1-5 that she was a U.S. citizen.

61. Ms. Morales also informed Defendants ICE Does 1-5 that she had been erroneously detained by ICE on a previous occasion in 2004, and that she was afraid that it may happen again. Defendants ICE Does 1-5 apologized, but only reinforced Ms. Morales's fear,

-14-

stating that it could happen again in the future.  Defendants ICE Does 1-5 never told Ms.

Morales that ICE would correct the problem or take any steps to ensure that she would not be

subject to wrongful detention again in the future.

62.     Finally, after multiple hours at the ICE Rhode Island Office, Ms. Morales was

released to her family.

63.     In total, the immigration detainer issued against Ms. Morales caused her to be

detained illegally and unconstitutionally for approximately one day.

64.     As a result of this imprisonment, Ms. Morales suffered the above-described

physical pain and injuries, as well as emotional distress.  During her imprisonment and for a

significant amount of time afterwards, she was scared, confused, shaky, anxious, nervous,

stressed, humiliated, and depressed, and had difficulty sleeping.  After her release, she

experienced a lasting fear of other people, especially law enforcement officials, and was afraid to

drive and go about her daily activities.

**B.      In Rhode Island, ICE Officials and Rhode Island State Officials Routinely
         Collaborate to Issue Unlawful Immigration Detainers Against U.S. Citizens Like
         Ms. Morales**

65.     On information and belief, Ms. Morales's experience is not unique and occurs

with regularity in Rhode Island.

66.     After Ms. Morales's release, Joan Mathieu, an immigration attorney, contacted

ICE in an effort to learn more about the circumstances surrounding the issuance of an

immigration detainer against Ms. Morales.  Ms. Mathieu was told by the ICE agent to whom she

spoke that "this kind of thing"—that is, the erroneous detention of U.S. citizens—happens not

infrequently.  The ICE agent told her that Rhode Island law enforcement officials routinely ask

arrestees where they were born or where they are from, and naturalized U.S. citizens will answer

that they were born outside the United States. Rhode Island officials communicate this information to ICE, and ICE routinely issues detainers based on this information. The ICE agent told Ms. Mathieu that if Ms. Morales is arrested again, ICE will likely put a detainer on her.

67. On information and belief, ICE Defendants and Rhode Island Defendants routinely collaborate to issue and enforce immigration detainers against U.S. citizens, particularly naturalized U.S. citizens, based on their race, ethnicity, and/or country of origin, without sufficient investigation into their citizenship or immigration status and without probable cause to believe that they are non-citizens subject to removal and detention.

68. On information and belief, during processing after a person is arrested and/or during the booking process at the ACI, Rhode Island Defendants regularly ask arrestees questions such as "Where were you born?" These questions have the foreseeable effect of causing naturalized U.S. citizens to respond with their country of birth, and thus to be wrongfully targeted for an immigration detainer on the basis of their race, ethnicity, and/or national origin. In addition, on information and belief, the Rhode Island Defendants subject certain arrestees to additional questioning about their immigration status, and/or refer them to ICE for consideration of whether to issue a detainer, based on the arrestees' perceived race, ethnicity, and/or national origin (for example, based on their appearance, country of birth, English language ability, and/or Spanish surnames). ICE Defendants and Rhode Island Defendants know or should know that these practices are discriminatory in purpose or effect.

69. On information and belief, when an arrestee answers these questions by providing a foreign country of birth, has a foreign-sounding last name, speaks English with an accent, and/or appears to be Hispanic, the Rhode Island Defendants often communicate his or her name and other demographic information to ICE Defendants.

-16-

70.     On information and belief, upon receiving this information from the Rhode Island Defendants, ICE Defendants often fail sufficiently to investigate the arrestee's citizenship or immigration background before issuing an immigration detainer.  On information and belief, ICE Defendants issue such detainers without probable cause to believe that the individual is a non-citizen subject to detention and removal by ICE.  On information and belief, ICE Defendants issue detainers without a sufficient investigation to determine whether arrestees who are perceived to be "foreign" (based on their place of birth, race or ethnicity, foreign-sounding last names, and/or English language ability) are in fact U.S. citizens, despite knowing that this will adversely affect naturalized U.S. citizens on the basis of their race, ethnicity, and/or national origin by causing them to be unlawfully detained.

71.     Upon information and belief, at all times relevant to this Complaint, neither ICE Defendants nor Rhode Island Defendants gave individuals subject to detainers notice or an opportunity to present evidence of their citizenship or lawful immigration status.

72.     At the time of Ms. Morales's detention in 2009, ICE's Detainer Form, Form I-247, "advised" the recipient correctional institution that ICE had some interest in the named individual:  Either an "[i]nvestigation has been initiated to determine whether this person is subject to removal from the United States"; a "Notice to Appear" has been served; a "warrant of arrest in removal proceedings" has been issued; or "[d]eportation or removal from the United States has been ordered."  The Form I-247 also "requested that [the recipient institution] . . . [p]lease accept this notice as a detainer," and listed a series of actions to be taken, including the following:  "Federal regulations (8 C.F.R. § 287.7) *require* that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sunday's [sic] and Federal holidays) to provide adequate time for DHS to assume custody of the alien. You may notify DHS by calling [local

-17-

ICE phone number] during business hours or [local ICE phone number] after hours in an emergency." (Emphasis added.) This language appears on Ms. Morales's immigration detainer. *See* Exhibit B.

73. ICE Defendants intend and expect immigration detainers to prevent release of the named individuals once their local or state custody has come to an end in accordance with the mandatory language in the detainer form.

74. The applicable federal regulation makes clear, however, that the immigration detainer is merely a "request," not a legally enforceable command.

75. Documents recently obtained through national Freedom of Information Act litigation have confirmed that ICE views detainers as merely requests, not orders. Yet ICE has in the past obfuscated, and continues to obfuscate, this issue, leading local and state officials to believe that they are *required* to continue detaining individuals on the basis of immigration detainers even after their local custody has come to an end.

76. For example, in August of 2010, in response to mounting public pressure, ICE announced that it would begin to use an amended Form I-247 that would clarify that detainers are not mandatory. The amended version stated: "Under Federal regulation 8 C.F.R. § 287.7, DHS *requests* that you maintain custody of this individual . . . ." *See* DHS Form I-247 (08/10), available at http://www.nysda.org/docs/PDFs/CIDP/App%20B%20I%20247%202010.pdf (emphasis added). However, ICE soon changed the language on Form I-247 again, reviving the confusion. The version currently in use "request[s]" that the local correctional institution "maintain custody of the subject," but also misleadingly states that the receiving "law enforcement agency '*shall* maintain custody of an alien' once a detainer has been issued by DHS." *See* DHS Form I-247 (12/11), available at http://www.ice.gov/doclib/secure-

communities/pdf/immigration-detainer-form.pdf (emphasis added).  Thus, the current ICE

detainer form perpetuates the same confusion now as it did at the time of Ms. Morales's

detention.

77.    Unlike criminal warrants, immigration detainers are not based upon a probable

cause determination by a neutral judicial officer.  Rather, they are notices issued by ICE itself.

78.    On information and belief, at all times relevant to this Complaint, ICE's practice

was to issue immigration detainers even where probable cause was lacking.  In fact, the Form I-

247 specifically purports to authorize detention based solely upon the fact that "*[i]nvestigation

has been initiated* to determine whether [the named individual] is subject to removal/deportation

from the United States."  *See* Exhibit B (emphasis added).  This practice continues today.

79.    On information and belief, at all times relevant to this Complaint, Rhode Island

Defendants had a policy of enforcing all immigration detainers received from ICE, and thus

routinely agreed to imprison the named individuals on less than probable cause.  On information

and belief, at all times relevant to this Complaint, Rhode Island Defendants had a policy or

practice of disregarding or refusing to consider any available evidence that individuals named in

detainers were U.S. citizens or lawfully present non-citizens not subject to deportation.

80.    On information and belief, at all times relevant to this Complaint, Rhode Island

Defendants had no training and no policies in place to prevent the unlawful detention of U.S.

citizens or lawfully present non-citizens based on wrongly issued immigration detainers.  Nor did

they have any training or policies in place regarding the treatment of individuals subject to

detainers.

C.  **Defendants Chadbourne, Riccio, and Wall Are Liable as Supervisors for the Violation of Ms. Morales's Rights under the Fourth, Fifth, and Fourteenth Amendments**

81.    At all times relevant to this Complaint, Defendants Chadbourne and Riccio knew or should have known that their subordinates, including Defendant Donaghy, regularly:  issued immigration detainers against individuals such as Ms. Morales, without conducting sufficient investigation and without probable cause to believe that the subject of the immigration detainer was a non-citizen subject to removal and detention; and issued immigration detainers with the intention and expectation that they would cause the individual to be detained, in violation of the Fourth Amendment.

82.    Defendants Chadbourne and Riccio knew or should have known that their subordinates, including Defendant Donaghy, regularly issued immigration detainers without providing the subjects of the immigration detainers with notice or an opportunity to present evidence of their citizenship or lawful immigration status, thereby violating the Due Process Clause.

83.    Defendants Chadbourne and Riccio knew or should have known that their subordinates, including Defendant Donaghy, routinely failed sufficiently to investigate the immigration status of naturalized U.S. citizens like Ms. Morales because of their foreign place of birth and/or perceived race or ethnicity, thereby subjecting these individuals to adverse treatment on the basis of their race, ethnicity, and/or national origin in violation of the Equal Protection Clause.

84.    Defendants Chadbourne and Riccio formulated, implemented, encouraged, or willfully ignored these policies and customs with deliberate indifference to the high risk of violating Ms. Morales's constitutional rights under the Fourth and Fifth Amendments.

PRV 1197144.1

85. Defendants Chadbourne and Riccio had the power and the authority to change these policies or customs by, for instance, training officers such as Defendant Donaghy to perform an adequate investigation into individuals' citizenship and immigration status before issuing detainers, or to provide notice and an opportunity for individuals to respond to detainers. Yet neither Defendant Chadbourne nor Defendant Riccio changed these harmful policies and customs, thereby causing the violation of Ms. Morales's constitutional rights.

86. At all times relevant to this Complaint, Defendant Wall knew or should have known that his subordinates at the ACI regularly received immigration detainers from ICE that were based solely upon ICE's initiation of an investigation, without probable cause to believe that the subject was a non-citizen subject to removal and detention. Defendant Wall knew or should have known that his subordinates at the ACI routinely continued detaining the subjects of such detainers even after all lawful bases for detention had expired, in violation of the Fourth Amendment.

87. Defendant Wall knew or should have known that his subordinates at the ACI regularly acted on immigration detainers without providing the subjects with notice or an opportunity to present evidence of their citizenship or lawful immigration status, thereby violating the Due Process Clause.

88. Defendant Wall knew or should have known that his subordinates at the ACI routinely reported detainees' information to ICE and failed to inquire into the basis of detainers solely because of the detainees' foreign-sounding names, English language ability, Hispanic appearance, and/or responses to processing or booking questions (e.g., "Where were you born?") that target individuals born abroad, including naturalized U.S. citizens.

PRV 1197144.1

89. Defendant Wall failed to implement any policies or provide any training to his subordinates regarding the treatment of individuals held at the ACI solely on the purported authority of immigration detainers.

90. Defendant Wall formulated, implemented, encouraged, or willfully ignored these policies and customs (or lack of policies and customs) with deliberate indifference to the high risk of violating Ms. Morales's constitutional rights under the Fourth and Fourteenth Amendments.

91. Defendant Wall had the power and the authority to change these policies or customs, but he did not, thereby causing the violation of Ms. Morales's constitutional rights.

92. As a direct and proximate result of the conduct of Defendants, Ms. Morales suffered substantial damages, including physical pain and suffering, emotional distress and harm, embarrassment, lost wages, other financial losses, and lost liberty.

93. Defendants' actions deprived Ms. Morales of her liberty and thus amounted to an unreasonable seizure of her person.

94. Defendants' actions deprived Ms. Morales of her liberty with reckless indifference to the absence of any lawful basis for detention.

95. Defendants' actions were arbitrary and capricious and had no legitimate or rational basis.

96. Defendants' actions were based on Ms. Morales's race, ethnicity, and/or national origin.

97. Defendants' actions failed to provide Ms. Morales with due process of law.

PRV 1197144.1

98.     At all times relevant to this Complaint, Defendants' conduct was deliberately indifferent to and in willful, reckless and callous disregard of Ms. Morales's rights under federal and state law.

99.     Because of Defendants' conduct, Ms. Morales reasonably fears that she will be subject once again to a false immigration detainer in the future, because of the procedurally and constitutionally flawed system ICE Defendants and Rhode Island Defendants have in place for the issuance of false immigration detainers against naturalized U.S. citizens.

100.    No remedy at law is adequate to ensure that Ms. Morales will not be subjected to a false immigration detainer or to unlawful detention in Rhode Island in the future.

<u>COUNT I</u>
**Fourth Amendment and Due Process (*Bivens*)**
**(Unreasonable Seizure)**
***Plaintiff v. Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5***

101.    The foregoing allegations are repeated and incorporated as if fully set forth herein.

102.    The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures."

103.    Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 caused an immigration detainer to issue against Ms. Morales, which was intended to cause and succeeded in causing a deprivation of Ms. Morales's liberty.  The immigration detainer was issued without probable cause to believe that Ms. Morales was a non-citizen subject to removal and detention.

104.    The issuance of the immigration detainer constituted an unreasonable seizure in violation of Ms. Morales's Fourth Amendment rights as well as an unlawful deprivation of Ms. Morales's liberty in violation of Due Process.

-23-

PRV 1197144.1

**COUNT II**
**Fifth Amendment and 8 U.S.C. § 1357 (*Bivens*)**
**(Due Process)**
***Plaintiff v. Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5***

105.     The foregoing allegations are repeated and incorporated as if fully set forth herein.

106.     The Fifth Amendment to the U.S. Constitution provides: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."

107.     By failing to follow ICE's own governing statutes and regulations, and thereby depriving Ms. Morales of her liberty, Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 violated the Due Process Clause of the Fifth Amendment.

108.     Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 violated Ms. Morales's Fifth Amendment right to Due Process as follows:

   a.   Defendants issued an immigration detainer against Ms. Morales without probable cause to believe that Ms. Morales is a non-citizen subject to removal and detention, in violation of 8 U.S.C. § 1357;

   b.   Defendants misrepresented to Rhode Island state officials that immigration detainers mandate detention and issued an immigration detainer Form I-247 that purports to mandate additional detention of an individual, all contrary to 8 C.F.R. § 287.7(a);

   c.   Defendants caused Ms. Morales to be detained for over twenty-four hours without affording her an opportunity to respond and provide evidence of her citizenship.

-24-

**COUNT III**
**Fifth Amendment (*Bivens*)**
**(Equal Protection)**
***Plaintiff v. Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5***

109.    The foregoing allegations are repeated and incorporated as if fully set forth herein.

110.    By issuing a detainer against Ms. Morales solely on the basis of her race, ethnicity, and/or national origin—including her place of birth and Spanish name—Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 targeted Plaintiff illegally under the Equal Protection Clause of the Fifth Amendment and violated her right to be free from discrimination on the basis of race, ethnicity and/or national origin.

**COUNT IV**
**Fourth and Fourteenth Amendment (42 U.S.C. § 1983)**
**(Unreasonable Seizure; Deprivation of Liberty and Due Process)**
***Plaintiff v. Defendants Wall and Rhode Island Does 1-10***

111.    The foregoing allegations are repeated and incorporated as if fully set forth herein.

112.    The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures." The Fourth Amendment's guarantees are applied to the States through the Fourteenth Amendment.

113.    Defendants Wall and Rhode Island Does 1-10 caused Ms. Morales to be detained at the ACI for over twenty-four hours after she was entitled to release and after their authority to detain her on criminal charges ceased. Defendants Wall and Rhode Island Does 1-10 did not have probable cause to believe that Ms. Morales was a non-citizen subject to removal and detention, but they continued to detain her despite her ability and willingness to demonstrate evidence of her citizenship. Defendants Wall and Rhode Island Does 1-10 thereby effected an

-25-

unreasonable seizure and deprivation of liberty in violation of Ms. Morales's rights under the Fourth and Fourteenth Amendments.

**COUNT V**
**Fourteenth Amendment (42 U.S.C. § 1983)**
**(Due Process)**
*Plaintiff v. Defendants Wall and Rhode Island Does 1-10*

114.     The foregoing allegations are repeated and incorporated as if fully set forth herein.

115.     The Fourteenth Amendment to the U.S. Constitution provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

116.     Defendants Wall and Rhode Island Does 1-10 violated Ms. Morales's Due Process rights under the Fourteenth Amendment by imprisoning her on less than probable cause to believe that she was a non-citizen subject to removal and detention without providing her notice or an opportunity to respond.

**COUNT VI**
**Fourteenth Amendment (42 U.S.C. § 1983)**
**(Equal Protection)**
*Plaintiff v. Defendants Wall and Rhode Island Does 1-10*

117.     The foregoing allegations are repeated and incorporated as if fully set forth herein.

118.     The Fourteenth Amendment to the U.S. Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

119.     By causing Ms. Morales's information to be reported to ICE Defendants solely on the basis of her place of birth, foreign-sounding name, Hispanic appearance, and/or English-language ability, Defendants Wall and Rhode Island Does 1-10 subjected Ms. Morales to adverse treatment (namely, reporting to ICE and consequent detention) based on her race, ethnicity,

-26-

and/or national origin, in violation of her right to equal protection under the Fourteenth Amendment.

120.    Defendants Wall and Rhode Island Does 1-10 disregarded Ms. Morales's statements that she was a U.S. citizen, and refused to consider her offers to show proof of her citizenship, on the basis of her race, ethnicity, and/or national origin.  They treated Ms. Morales as presumptively subject to detention and removal as an allegedly deportable "alien" on the basis of her Hispanic identity.

<u>**COUNT VII**</u>
**False Arrest / False Imprisonment**
*Plaintiff v. Defendants Wall and Rhode Island Does 1-10*

121.    The foregoing allegations are repeated and incorporated as if fully set forth herein.

122.    Defendants Wall and Rhode Island Does 1-10 inflicted personal injury on Ms. Morales by subjecting her to false arrest and imprisonment.  They intentionally detained Ms. Morales solely on the basis of an immigration detainer issued without legal justification or probable cause.

123.    There was no lawful justification for Ms. Morales's detention after the state court ordered her released on her own recognizance.

124.    Ms. Morales was aware of her imprisonment and did not consent to it.

125.    Defendant Wall intentionally, recklessly, and/or negligently established and/or enforced policies and practices that caused Ms. Morales to be unlawfully and tortiously detained. He also failed to establish and/or enforce policies and practices that would have prevented Ms. Morales's unlawful and tortious detention.

-27-

## COUNT VIII
## Negligence
### *Plaintiff v. Defendants Wall and Rhode Island Does 1-10*

126.     The foregoing allegations are repeated and incorporated as if fully set forth herein.

127.     Defendants Wall and Rhode Island Does 1-10 have a duty to act with reasonable care and not subject individuals to personal injury during the course of their duties. Defendants have duties not to subject individuals to discriminatory treatment on the basis of race, ethnicity, and/or national origin; unreasonable searches and seizures; or deprivations of liberty without due process. They also have duties to adequately train and supervise their subordinates and to establish and enforce policies and practices to prevent the occurrence of constitutional and tortious actions by their subordinates.

128.     Defendants Wall and Rhode Island Does 1-10 breached these duties, and the breach was the proximate cause of Ms. Morales's unlawful detention and resulting injuries.

## COUNT IX
## False Arrest / False Imprisonment (Federal Tort Claims Act, 28 U.S.C. §§ 2671, 1346)
### *Plaintiff v. Defendant United States*

129.     The foregoing allegations are repeated and incorporated as if fully set forth herein.

130.     Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 intentionally caused Ms. Morales to be imprisoned on the basis of an immigration detainer issued without legal justification or probable cause.

131.     There was no lawful justification for Ms. Morales's detention after the state court ordered her released on her own recognizance.

132.     Ms. Morales was aware of her imprisonment and did not consent to it.

PRV 1197144.1

133. Defendants Chadbourne and Riccio intentionally, recklessly, and/or negligently established and/or enforced policies and practices that caused Ms. Morales to be unlawfully and tortiously detained. They also failed to establish and/or enforce policies and practices that would have prevented Ms. Morales's unlawful and tortious detention.

134. Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 were at all relevant times employees of the United States acting within the scope and course of their employment. Under the FTCA, Defendant United States is liable for these actions.

## COUNT X
### Negligence (Federal Tort Claims Act, 28 U.S.C. §§ 2671, 1346)
### *Plaintiff v. Defendant United States*

135. The foregoing allegations are repeated and incorporated as if fully set forth herein.

136. ICE officials have a duty to act with reasonable care and not subject individuals to personal injury during the course of their duties. ICE officials have duties not to subject individuals to discriminatory treatment on the basis of race, ethnicity, and/or national origin; unreasonable searches and seizures; or deprivations of liberty without due process. ICE officials also have duties to adequately train and supervise their subordinates and to establish and enforce policies and practices to prevent the occurrence of unconstitutional and tortious actions by their subordinates.

137. Here, ICE agents—Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5—breached these duties in the course and scope of their employment, and the breach was the proximate cause of Ms. Morales's unlawful detention and resulting injuries.

PRV 1197144.1

138.     Defendants Chadbourne, Riccio, Donaghy, Mercurio, and ICE Does 1-5 were at

all relevant times employees of the United States acting within the scope and course of their

employment.  Under the FTCA, Defendant United States is liable for these actions.

### COUNT XI
### Declaratory Relief (28 U.S.C. § 2201)
### *Plaintiff v. All Defendants*

139.     The foregoing allegations are repeated and incorporated as if fully set forth

herein.

140.     A ripe and justiciable controversy exists with regard to the circumstances and

legality of Plaintiff's prior detention(s).

141.     As a result, Plaintiff is entitled to a declaration in her favor pursuant to 28 U.S.C.

§ 2201.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

a.     Issue permanent injunctions against ICE Defendants (Defendants Chadbourne,

Riccio, Donaghy, Mercurio, and ICE Does 1-5) in their official capacities,

prohibiting them from issuing detainers against Ms. Morales in the future, or

otherwise causing her to be illegally detained as an alleged deportable "alien";

b.     Issue permanent injunctions against Rhode Island Defendants (Defendants Wall

and Rhode Island Does 1-10) in their official capacities, prohibiting them from

detaining Ms. Morales on the basis of an immigration detainer;

c.     Issue a judicial declaration that ICE Defendants (Defendants Chadbourne, Riccio,

Donaghy, Mercurio, and ICE Does 1-5) violated the Constitution and federal law

by:

      i.    Failing to adequately investigate Ms. Morales's citizenship;

     ii.    Detaining Ms. Morales without providing an adequate notice or opportunity to respond;

   iii.    Subjecting Ms. Morales to discriminatory treatment in violation of the Equal Protection Clause;

   iv.    Using a detainer form that falsely described ICE's request that ACI officials detain Ms. Morales as mandatory; and

    v.    Causing Ms. Morales to be detained in the ACI solely on the basis of the detainer, without probable cause to believe she was a non-citizen subject to detention and removal;

d.    Issue a judicial declaration that Rhode Island Defendants (Defendants Wall and Rhode Island Does 1-10) violated the Constitution by:

      i.    Failing to adequately investigate Ms. Morales's citizenship;

     ii.    Detaining Ms. Morales without providing an adequate notice or an opportunity to respond;

   iii.    Subjecting Ms. Morales to discriminatory treatment in violation of the Equal Protection Clause; and

   iv.    Detaining Ms. Morales solely on the basis of the detainer, without probable cause to believe she was a non-citizen subject to detention and removal;

e.    Award compensatory and punitive damages against all individual Defendants in their individual capacities for the above violations of federal and state law;

f.    Award compensatory damages against the United States under the FTCA;

PRV 1197144.1

g. Award prejudgment interest on any award of damages to the extent permitted by law;

h. Award reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and any other applicable law;

i. Grant such other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable.

Dated:     May 3, 2012

ADA MORALES

By her Attorneys,


_/s/ Mark W. Freel_____
Mark W. Freel (# 4003)
Erika J. Lindberg (# 8056)
Cooperating Attorneys, American Civil Liberties
Union, Rhode Island Affiliate
EDWARDS WILDMAN PALMER LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611  (fax)


OF COUNSEL:     Omar C. Jadwat
ACLU Foundation Immigrants' Rights Project
125 Broad St., 18th floor
New York, NY 10004
Tel.: (212) 549-2660
Fax: (212) 549-2654
OJadwat@aclu.org

Katherine Desormeau
ACLU Foundation Immigrants' Rights Project
39 Drumm St.
San Francisco, CA 94111
Tel.: (415) 343-0778
Fax: (415) 395-0950
KDesormeau@aclu.org

-32-