# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADA MORALES | : |
| | : |
| v. | :   C.A. NO.: 12-301-M-DLM |
| | : |
| BRUCE CHADBOURNE, | : |
| DAVID RICCIO, EDWARD DONAGHY, | : |
| GREG MERCURIO, ICE DOES 1-5, | : |
| RHODE ISLAND DOES 1-10, | : |
| ASHBEL T. WALL | : |

## **MOTION TO DISMISS**

Now comes Defendant, Ashbel T. Wall in his official and individual capacities as Director of the R.I. Department of Corrections ("Defendant" or "RIDOC"), and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss the Amended Complaint filed in this civil action by Plaintiff, Ada Morales ("Plaintiff" or "Morales"). In support, Defendant submits the accompanying Memorandum of Law.

WHEREFORE, Defendant respectfully requests that this Motion to Dismiss be granted.

                                                   DEFENDANT
                                                   By his Attorney,

                                                   PETER F. KILMARTIN
                                                   ATTORNEY GENERAL

                                                   /s/ Adam J. Sholes
                                                   _____
                                                   Adam J. Sholes, Esq. (Bar No. 7204)
                                                   Special Assistant Attorney General
                                                   R.I. Department of Attorney General
                                                   150 South Main Street
                                                   Providence, RI 02903-2907
                                                   Tel.: (401) 274-4400, Extension 2219
                                                   Fax: (401) 222-3016
                                                   ajsholes@riag.ri.gov

2

## **CERTIFICATE OF SERVICE**

  I hereby certify that I filed the within Motion to Dismiss via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF system to the following attorneys on this 4th day of September, 2012.

**Mark W. Freel, Esquire**
mfreel@edwardswildman.com

**Erika J. Lindberg, Esquire**
elindberg@edwardswildman.com

**Erin Brizius, Esquire**
erin.e.brizius@usdoj.gov

            /s/ Adam J. Sholes

            _____

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ADA MORALES | : |
| | : |
| v. | :     C.A. NO.: 12-301-M-DLM |
| | : |
| BRUCE CHADBOURNE, | : |
| DAVID RICCIO, EDWARD DONAGHY, | : |
| GREG MERCURIO, ICE DOES 1-5, | : |
| RHODE ISLAND DOES 1-10, | : |
| ASHBEL T. WALL | : |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

This Memorandum of Law supports the Motion to Dismiss by Ashbel T. Wall in his official and individual capacities as Director of the R.I. Department of Corrections ("Defendant" or "RIDOC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendant asserts that Plaintiff, Ada Morales ("Plaintiff" or "Morales") has failed to state a claim upon which relief can be granted and that the Amended Complaint in this civil action filed by Ms. Morales, should be dismissed as a matter of law.

## UNDISPUTED FACTS OF THE CASE

Defendant relies on the undisputed facts in support of its motion to dismiss:

1. On May 1, 2009, Ada Morales was arrested by the Rhode Island State Police on the charge of obtaining money under false pretenses. See Amended Complaint ¶26.

2. Following her arrest, Rhode Island State Police transported Ms. Morales to RIDOC. See Amended Complaint ¶28.

3. From Saturday May 2, 2009 until early Tuesday May 5, 2009, Ms. Morales was under the care, custody and control of RIDOC. See Amended Complaint ¶57.

4. On Monday May 4, 2009, at approximately 8:32 a.m., RIDOC received an immigration detainer from Co-Defendant, U.S. Immigration & Customs Enforcement ("ICE"). See Amended Complaint ¶31.

5.  The immigration detainer form informed RIDOC that federal regulations "require" RIDOC to detain Ms. Morales for a period not to exceed 48 hours.  See Amended Complaint ¶33; Plaintiff's Exhibit B.

6.  Subsequent to receiving the immigration detainer, on May 4, 2009, Ms. Morales was granted bail in the form of $10,000 personal recognizance.  See Amended Complaint ¶43.

7.  Because there was an immigration detainer issued for Ms. Morales, Ms. Morales was transported back to RIDOC following her bail hearing.  See Amended Complaint ¶46.

8.  On May 4, 2009, after being transported back to RIDOC, RIDOC attempted to contact ICE to ascertain the status of the immigration detainer.  See Amended Complaint ¶50.

9.  Ms. Morales spent one night (or approximately 24 hours) in RIDOC custody as a result of the immigration detainer.  See Amended Complaint ¶63.

10. On Tuesday May 5, 2009, custody was transferred to ICE.  See Amended Complaint ¶57.

11. ICE released Ms. Morales from its custody on May 5, 2009.  See Amended Complaint ¶62.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, plaintiff's "well-pleaded facts must possess enough heft to show that [they are] entitled to relief."  Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).  In evaluating whether plaintiff's are entitled to relief, the court must accept as true all well-pleaded facts and indulge all reasonable inferences in plaintiff's favor.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).  The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice."  Id. at 305–306.

Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions,

periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (1st Cir. 1998) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Thus, plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997).

Moreover, a complaint must allege "a plausible entitlement to relief." Twombly, 550 U.S. at 559 (cited in Rodriguez–Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007)). In Ashcroft v. Iqbal, 556 U.S. 662, 676 (U.S. 2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. Iqbal at 662. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., 677–79. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir.2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio–Hernandez v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**ARGUMENT**

1.  **RIDOC Lawfully And Legally Detained Plaintiff.**

    8 C.F.R. § 287.7(d)[1] states in pertinent part:

    Upon a determination by [ICE] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency <u>shall</u> maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by [ICE]. (Emphasis added).

Based on the above Federal regulation, Plaintiff was lawfully and legally detained by RIDOC. Thus, all of the counts should be dismissed against Defendant Wall.

It should be noted at the outset that it is undisputed that Plaintiff was lawfully and legally detained by RIDOC from May 2 to May 4, 2009. The only time period in dispute is approximately 24 hours from May 4 to May 5, 2009. <u>See</u> Amended Complaint ¶63. Although there are no cases from the First Circuit on point, other federal courts have had the occasion to deal with immigration detainers in similar contexts. In <u>Rivas v. Martin</u>, 781 F.Supp.2d 775 (N.D.Ind. 2011), the plaintiff was arrested on a felony charge. While in state custody, ICE issued an immigration detainer. The immigration detainer contained identical language to the one at issue and stated: "Federal regulations (8 C.F.R. 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sunday's [sic] and Federal holidays) to provide adequate time for DHS to assume custody of the alien." <u>Id</u>. at 776. After posting her bail, Rivas was held in prison for approximately five (5) days based solely on the immigration detainer. <u>Id</u>. at 777. Rivas subsequently brought a Section 1983 action against the prison alleging that she was unlawfully detained. <u>Id</u>.

---

[1] Federal regulations have the force and effect of law. <u>See</u>, <u>e.g.</u>, <u>Paul v. United States</u>, 371 U.S. 245, 255 (1963); <u>Entertainment Publications, Inc. v. Goodman</u>, 67 F.Supp.2d 15, 18 (D.Mass. 1999).

4

Although the court in Rivas denied the defendant's motion to dismiss because the plaintiff was held beyond the 48 hour time period, it observed "[w]hen someone is arrested and detained without a warrant, it is presumptively reasonable for that person to be detained up to 48 hours pending a determination of probable cause. Id. at 780. (Emphasis added) (citing County of Riverside v. McLaughlin, 500 U.S. 44 (1991)). The Rivas court continued that "the language of the detainer and of 8 C.F.R. § 287.7 made it clear that defendants could only hold Rivas for an additional 48 hours under the detainer." Id. at 782. And that "[c]ourts have determined that 8 C.F.R. § 287.7 requires only that the official upon whom the INS has served a detainer hold the alien, who could otherwise no longer be lawfully detained, for up to 48 hours in order to permit the INS to assume custody of him." Id. (citing Royer v. INS, 730 F.Supp. 588, 591 (S.D.N.Y.1990); Moreno Escobar v. U.S. Dep't of Justice, No. Misc. 05–0048, 2005 WL 1060635, at *1 (E.D.Pa. 2005)) (unpublished) (citing to 8 C.F.R. § 287.7(d) and stating "[p]ursuant to a detainer request, state or federal officials may hold an alien for forty-eight hours after his release date").

In Royer v. INS, 730 F.Supp. 588 (S.D.N.Y. 1990), the plaintiff was serving a lengthy prison sentence on state charges. Subsequent to being eligible for parole, the immigration agency filed a detainer for the plaintiff. Id. At that time the state was considering granting parole to the plaintiff for the sole purpose of deporting him. Id. The plaintiff refused to sign the necessary paperwork to be transferred to federal custody so he remained in state prison. Id. The plaintiff brought a lawsuit alleging numerous constitutional violations. Id. In dismissing the lawsuit, the court held:

> Section 287.7(a)(4) requires only that the official upon whom the INS has served a detainer hold the alien, who could otherwise no longer be lawfully detained, for up to 48 hours in order to permit the INS to assume custody of him....The detainer would merely have allowed the State to lawfully continue to hold

5

<u>plaintiff for up to 48 hours following his scheduled release</u> or parole to facilitate INS's assumption of custody. Id. at 591. (Emphasis added).

Moreover, Ms. Morales' detention was based on a facially valid request to detain her. In <u>Baker v. McCollan,</u> 443 U.S. 137 (U.S. 1979), the Supreme Court ruled that a person detained on a valid warrant, even when that person was innocent of the charges, could not assert that the detention was unconstitutional or bring a §1983 action. In <u>Baker</u>, while using his brother's identification, the respondent was arrested for running a red light. Id. at 141. A routine warrant check revealed that his brother was wanted and the respondent was taken into custody over his protests of mistaken identification. Id. The police department compared the identifying information on the driver's license with that contained in the arrest records, and concluded that they had their man. Id. The respondent was detained for four (4) days before officials compared his appearance against a file photograph of the wanted man and, recognizing their error, released him. The respondent brought a damages action "pursuant to the Fourteenth Amendment to the United States Constitution and . . . [§] 1983." Id.

The Supreme Court noted that the respondent was arrested pursuant to a facially valid warrant. Id. at 143. "McCollan's § 1983 claim against the sheriff is not for the wrong name being placed in the warrant or the failure to discover and change same or even the initial arrest of the respondent, but rather for the intentional failure to investigate and determine that the wrong man was imprisoned." Id. In essence, the allegation was that despite "protests of mistaken identity, [respondent] was detained in the jail until the validity of his protests was ascertained." Id. at 144. The Court held that "we think [this claim] gives rise to no claim under the United States Constitution." Id. The respondent "was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment….[W]e are quite certain that a detention of three days

over a New Year's weekend does not and could not amount to such a deprivation." Id. The Court further held that respondent's "innocence of the charge contained in the warrant," is "largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested." Id. at 145.

Respectfully, Federal case law and regulation support RIDOC's lawful detention of Plaintiff until ICE took custody of her on May 5, 2009. RIDOC received the immigration detainer prior to granting of bail to the Plaintiff on May 4, 2009. RIDOC complied with the federal regulation which required RIDOC to detain Ms. Morales for up to 48 hours following her scheduled release. Being Federal law, 8 C.F.R. § 287.7(d) is obligatory and mandated RIDOC to detain Ms. Morales for an additional 48 hours. Even taking all of the facts in the light most favorable to Ms. Morales, she was released within the 48 hour time period. Therefore, A.T. Wall requests that all counts be dismissed against him in his individual and official capacities.

**2.     Plaintiff Has No Viable Constitutional Claims Against Defendant Wall.**

Given the applicable case law, Director Wall cannot be held individually liable for the alleged Federal constitutional violations brought pursuant to 42 U.S.C. §1983. Thus, the following counts against should be dismissed against Director Wall in his individual capacity:

- Count IV: Unreasonable seizure – Fourth and Fourteenth Amendments (42 U.S.C. §1983)
- Count V:  Due Process - Fourth Amendment (42 U.S.C. §1983)
- Count VI:  Equal Protection - Fourteenth Amendment (42 U.S.C. §1983)

As stated by the U.S. Supreme Court: "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. 662, 676 (U.S. 2009). See also Monell v. Department of Social Services, 436 U.S. 658, 690-92 (1978) and Gutierrez Rodriguez v. Cartagena, 882 F.2d 533, 562

7

(1st Cir. 1989).  Supervisory officials may be found liable only on the basis of their own acts or omissions.  Figueroa v. Aponte Roque, 864 F.2d 947, 953 (1st Cir. 1989).

As an example from the First Circuit, in Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009), the mayor of Barceloneta, Puerto Rico established a policy to dispose of pets in public housing complexes.  After residents refused to follow the policy, a private contractor was hired who killed many of the pets by throwing them against a van or off a nearby cliff.  568 F.3d at 267.  Applying the deliberate indifference standard, the court held that the mayor could not be held liable under 42 U.S.C. §1983, despite establishing the policy to dispose of the pets and his presence at one of the raids.  Id. at 275.  The court said that, to support a claim of supervisory liability, a plaintiff must plead facts indicating "an affirmative link between the behavior of the subordinate and the action or inaction of his supervisor…such that the supervisor's conduct led inexorably to the constitutional violation."  Id. at 275 (citations and internal quotations omitted, with emphasis supplied).  Simply creating a policy, which was silent to the manner of how to dispose of the pets, was "insufficient to create the affirmative link necessary for a finding of supervisory liability, even under a theory of deliberate indifference."  Id.  Here, Director Wall had no personal involvement, thus no link, to the acts or omissions of his subordinates that allegedly caused or contributed to Ms. Morales being held on an immigration detention.  Director Wall was neither personally involved with her detention nor a party to the issuance of the immigration detainer.

In Daniels v. Williams, 474 U.S. 327 (1986), the plaintiff, a state prisoner, claimed that he was deprived of his constitutional rights under the Fourteenth Amendment when he sustained an injury after slipping on a pillow that was negligently left on the stairs by a correctional officer.

8

Daniels, 474 U.S. at 328.  The court held that a lack of due care by prison officials does not violate a prisoner's due process rights:

> The only tie between the facts of this case and anything governmental in nature is the fact that respondent was a sheriff's deputy at the Richmond city jail and petitioner was an inmate confined in that jail.  But while the Due Process Clause of the Fourteenth Amendment obviously speaks to some facets of this relationship, we do not believe its protections are triggered by lack of due care by prison officials…Where a government official's act causing injury to life, liberty, or property is merely negligent, "no procedure for compensation is *constitutionally* required."

Id. at 332-33 (citations omitted).

In Davidson v. Cannon, 474 U.S. 344, 345-46 (1986), a prisoner claimed his constitutional rights were violated after he warned a prison official that a fellow-prisoner was threatening to attack him, and the prison official failed to take action to prevent the attack.  The court reiterated its opinion in Daniels, saying that a prison official's lack of due care "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent…the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."  Davidson, 474 U.S. at 347-48.

Thus, to be actionable as constitutional violations, acts or omissions must constitute more than mere negligence; instead, they must amount to a reckless or callous indifference to the constitutional rights of others.  Daniels, 474 U.S. 327 and Davidson, 474 U.S. 344.  See also Germany v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989).

Wall's actions fail to meet the "affirmative link" standard or the "reckless or callous indifference" requirement necessary to establish his liability for the alleged Fourth and Fourteenth Amendments violation.  Ms. Morales' Amended Complaint makes no mention of any personal involvement between A.T. Wall and the Plaintiff.  It is undisputed that Wall took no

9

part in the decision to arrest Ms. Morales or to issue an immigration detainer. Thus, Wall does not have the necessary "affirmative link" to the actions or omissions of any RIDOC employee to establish liability. Similar to Maldonado, Defendant Wall, as RIDOC Director, is responsible for establishing the policies DOC personnel are required to follow. This alone cannot supply the affirmative link necessary to establish supervisory liability. Furthermore, Wall's acts or omissions do not exhibit "reckless or callous indifference" toward Ms. Morales. Thus, this Motion should be granted as to the constitutional claims against Wall.

**3.      The State of Rhode Island Is Not A Person Within the Meaning of Section 1983.**

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

In Will v. Michigan, 491 U.S. 58, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." In reaching its decision, the Court first noted that " 'in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.' " Will, 109 S.Ct. at 2308 (citations omitted). Furthermore, the Court observed that the language of § 1983 "falls far short of satisfying the ordinary rule of statutory construction that if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.' " Id. (citations omitted). Finally, in attempting to decipher the congressional intent as to the scope of § 1983, the Court concluded that Congress did not intend

for § 1983 to provide a federal forum for litigants seeking a remedy against a State for alleged deprivations of civil liberties. Id. at 2309.

In Jones et al. v. State of Rhode Island et al., 724 F.Supp. 25 (1st Cir. 1989), the First Circuit applied the Supreme Court's holding in Will, and held that "neither the State of Rhode Island nor any of its officials acting in their official capacities, are "persons" that can be held liable under § 1983." Id. at 28.  In the instant case, the Amended Complaint only names A.T. Wall in his individual and official capacities as a named State Defendant.  Although the Plaintiff makes reference to other state agencies, no other party is a named defendant or has been served.  Therefore, because the State of Rhode Island is not a 'person' within the meaning of § 1983, the Amended Complaint should be dismissed against A.T. Wall in his official capacity and the State of Rhode Island.[2]

**4.      The Amended Complaint Does Not Contain A Short And Plain Statement of A Claim.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Amended Complaint is encompassed in 32 pages, 141 paragraph and 2 exhibits.  The information in the Amended Complaint is not a "pleading" contemplated by Rule 8(a)(2), and would necessitate an inordinate amount of time to answer.

There are a number of recent decisions issued in the United States District Court - District of Rhode Island addressing the very issue at hand.  In Laurence v. Wall, 2007 WL 1875794 (D.R.I. 2007), Judge Lisi dismissed an 80-page complaint that contained over 255

---

[2] The First Circuit has held that in order to state a claim for individual liability "plaintiff must demonstrate personal liability" on the part of the supervisory defendant. See Jones et al. at 31 (quoting Zralka v. Tures, 708 F.Supp. 948 (N.D.Ill.1989)).  Moreover, "[t]he plaintiff must state specifically how each defendant was personally involved in the deprivation." Del Signore v. City of McKeesport, 680 F.Supp. 200, 203 (W.D.Pa. 1988).

numbered paragraphs because it violated Rule 8.  The court held that "[t]he statement should be short because unnecessary length places an unjustified burden on the court and on the party who must respond to it."  Id. at 1.  Furthermore, [t]he statement should be plain because the principle function of pleadings…is to give the adverse party fair notice of the claim asserted to enable him to answer and prepare for trial."  Id.

In Peabody v. Griggs, 2009 WL 3200686 (D.R.I. 2009), the plaintiff filed a number of lengthy complaints which Judge Lisi dismissed pursuant to Rule 8.  Plaintiff's original complaint was 84 pages, contained 19 counts and 535 numbered paragraphs.  Plaintiff's first amended complaint was 97 pages, 18 counts, 538 numbers paragraphs and contained 7 exhibits which totaled an additional 36 pages.  Judge Lisi granted defendant's motion to dismiss pursuant to Rule 8.  The court, however, permitted plaintiff to file another amended complaint.  Plaintiff's second amended complaint consisted of 73 pages, 13 counts, 380 numbered paragraphs and 6 exhibits which totaled an additional 22 pages.

After filing the second amended complaint, it appears that the court, *sua sponte*, ordered plaintiff to show cause why the second amended complaint did not violate Rule 8.  Id. at 1.  In dismissing the second amended complaint, the court noted that length alone is not the issue.  Rather, "[w]hen viewed in its totality, the complaint is a rambling, fact-laden, disjointed 'quagmire of minutiae.'"  Id. at 4 (quoting Kuchay v. Vetter, 2007 WL 2410333, at *1 (N.D.Ill. 2007)).  Judge Lisi noted that the complaint was replete with irrelevant, repetitive, and incomprehensible factual averments that saddled Defendants with the unfair task of meeting their obligation to "admit or deny the allegations asserted ... by an opposing party."  Id.  The complaint would also force the court to parse countless irrelevant and wholly unnecessary factual allegations to attempt to determine what Plaintiffs are alleging against each Defendant.  Id.

Judge Lisi provided examples of the unnecessary factual allegations and noted that the "mash of allegations [in the second amended complaint] read more like a novel than a legal pleading and frequently digress into improper argumentative detail." Id. at 10. (quoting Lease v. Fishel, 2009 WL 922486, at *2 (M.D. 2009)); see also Fritz v. County of Kern, 2009 WL 382741, at *2 (E.D.Cal. 2009) (a "complaint is not a novel-background allegations and evidentiary detail are simply unnecessary and violate Rule 8(a)(2)"); In re Electronic Data Systems Corp., 305 F.Supp.2d 658 (E.D.Tex. 2004) (Rule 8 is violated when plaintiffs choose to plead excessive facts).

Judge Lisi concluded that the "time and expense involved…to decipher and parse this overly detailed and unduly cumbersome complaint is wholly unjustified." Id. at 11. As such, in dismissing the second amended complaint, she noted that "[c]omplaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [the goals of the federal rules of civil procedure and] such complaints must be dismissed." Id. (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y.1972)).

In the case at hand, Plaintiff's Amended Complaint is excessively long and contains an abundance of argumentative and overly editorial material. By way of example:

> 40. For example, when Ms. Morales became a U.S. citizen through the naturalization process in 1995, she submitted an application to the federal immigration authorities and passed a citizenship examination. On information and belief, the federal immigration authorities maintain records of naturalization applications in their databases. In addition, ICE had subjected Ms. Morales to a detainer once before, in 2004, and released her after confirming that she was a U.S. citizen; ICE therefore had information in its possession about Ms. Morales' citizenship. ICE could easily have accessed the information in its possession and confirmed that Ms. Morales was a U.S. citizen before subjecting her to a detainer in 2009.

13

45. This was the first time Ms. Morales learned that an immigration detainer had been lodged against her. Ms. Morales protested, informing Judge Harwood that she was a U.S. citizen. Ms. Morales's husband was present in the courtroom and offered to show a copy of Ms. Morales's passport as proof of Ms. Morales's U.S. citizenship. However, on information and belief, Judge Harwood stated that Ms. Morales' objections were beyond her jurisdiction and that Ms. Morales would have to address the issue with the immigration authorities.

66. After Ms. Morales's release, Joan Mathieu, an immigration attorney, contacted ICE in an effort to learn more about the circumstances surrounding the issuance of an immigration detainer against Ms. Morales. Ms. Mathieu was told by the ICE agent to whom she spoke that "this kind of thing" – that is, the erroneous detention of U.S. citizens – happens not infrequently. The ICE agent told her that Rhode Island law enforcement officials routinely ask arrestee where they were born or where they are from, and naturalized U.S. citizens will answer that they were born outside of the United States. Rhode Island officials communicate this information to ICE, and ICE routinely issues detainers based on this information. The ICE agent told Ms. Mathieu that if Ms. Morales is arrested again, ICE will likely put a detainer on her.

75. Documents recently obtained through national Freedom of Information Act litigation have confirmed that ICE views detainers as merely requests, not orders. Yet ICE has in the past obfuscated, and continues to obfuscate, this issue, leading local and state officials to believes that they are required to continue detaining individuals on the basis of immigration detainers even after their local custody has come to an end.

These examples are by no means exhaustive. Each page is replete with argumentative and conclusory language. Simply put, the 32-page, 141-paragraph complaint is not a short and plain statement, fails to comply with Rule 8 and therefore should be dismissed. As the First Circuit has implicitly recognized by imposing page limits on appellate briefs, the length of a pleading is not indicative of its substance. Based on the foregoing, Defendant requests that Plaintiff's Amended Complaint be dismissed.

## **CONCLUSION**

With all due respect, Defendant A.T. Wall is a throw-away defendant in this case, added last to a list of Federal defendants, which clearly arises from Federal action. Therefore, for the reasons set forth herein, the Motion to Dismiss filed by Defendant should be granted.

DEFENDANT
By his Attorney,

PETER F. KILMARTIN
ATTORNEY GENERAL


/s/ Adam J. Sholes
_____

Adam J. Sholes, Esq. (Bar No. 7204)
Special Assistant Attorney General
R.I. Department of Attorney General
150 South Main Street
Providence, RI 02903-2907
Tel.: (401) 274-4400, Extension 2219
Fax: (401) 222-3016
ajsholes@riag.ri.gov


## CERTIFICATE OF SERVICE

I hereby certify that I filed the within Motion to Dismiss via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF system to the following attorneys on this 4th day of September, 2012.

**Mark W. Freel, Esquire**
mfreel@edwardswildman.com

**Erika J. Lindberg, Esquire**
elindberg@edwardswildman.com

**Erin Brizius, Esquire**
erin.e.brizius@usdoj.gov


/s/ Adam J. Sholes
_____

15