UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|   |   |   |
|---|---|---|
| ADA MORALES,<br>        Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 12-301-M |
| BRUCE CHADBOURNE, et al.<br>        Defendants. | ) ) ) ) | |

**MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., United States District Judge.

Before the Court are several motions to dismiss brought by certain individual defendants in this case.[1] This lawsuit seeks to resolve three questions: whether the federal government unlawfully detained Ms. Ada Morales in violation of her right to be free from illegal seizure, her substantive due process and equal protection rights; whether ICE deprived her of liberty without notice or an opportunity to be heard in violation of her procedural due process rights; and whether the state's immigration detainer policies and procedures illegally detain persons without probable cause and otherwise violated Ms. Morales' constitutional and common law rights.

---

[1] These defendants brought the following motions to dismiss: the United States of America, Bruce Chadbourne, David Riccio, Gregory Mercurio, and Edward Donaghy ("Federal Defendants") (ECF No. 17); Mr. Chadbourne and Mr. Riccio, in their individual capacities (ECF No. 18); Mr. Mercurio (ECF No. 19); and A.T. Wall (a state defendant) (ECF No. 21). Mr. Donaghy did not file an individual motion to dismiss but he did file a Combined Motion to Dismiss Counts 2 and 3 only and a Motion for Summary Judgment as to all counts. (ECF No. 20.) Ms. Morales also sued "ICE Does 1-5" and "Rhode Island Does 1-10." They are not subject to any motions.

## I.   FACTS AND BACKGROUND[2]

Ms. Ada Morales is a United States citizen who was born in Guatemala. (ECF No. 4 at

¶ 1.)  She became a naturalized United States citizen on September 11, 1995 (*Id.* at ¶ 23) using

her maiden name, Ada Amavilia Cabrera. (ECF No. 17-1 at 3.)  Prior to becoming a United

States citizen, she had lived in the United States since the 1980s as a lawful permanent resident.

(ECF No. 4 at ¶ 23.)  She and her husband, a lawful permanent resident, have five children, all of

whom are United States citizens. (*Id.* at ¶ 24.)     Ms.  Morales'  current  encounter  with

immigration authorities began on Friday, May 1, 2009 when the Rhode Island State Police

("State Police") arrested her pursuant to a warrant for state criminal charges related to alleged

misrepresentations on a state public benefits application. (*Id. at* ¶ 26.)  While at the State Police

office, a state official asked Ms. Morales where she was born and whether she was "legal." (*Id.*

at ¶ 27.)  Ms. Morales replied that she was born in Guatemala and was a naturalized United

States citizen. (*Id.*)

The State Police transported Ms. Morales to the Rhode Island Adult Correctional

Institution ("ACI") either on the night of Friday, May 1, 2009, or on the morning of Saturday,

May 2, 2009. (*Id.*)  The State held Ms. Morales at the ACI until she could appear before a state

court magistrate judge on Monday, May 4, 2009. (*Id.* at ¶¶ 28, 42.)

At some point after Ms. Morales' interview, an unidentified state official (named as

"John Doe" in the Complaint) reported Ms. Morales' name, place of birth, and "other

---

[2] The Court describes the facts primarily as set out in Ms. Ada Morales' Amended Complaint
("Complaint").   (ECF No. 4.)   drawing all factual inferences in her favor.   *Silverstrand
Investments v. AMAG Pharmaceuticals, Inc.*, 707 F.3d 95, 101 (1st Cir. 2013).  The Court must
accept all factual allegations in the Complaint as true. *ACA Financial Guaranty Corp. v. Advest*,
512 F.3d 46, 56 (1st Cir. 2008).  When facts are obtained elsewhere, it is noted.

information" to the local Immigration and Customs Enforcement ("ICE")[3] office "because of her race, ethnicity, and/or national origin." (*Id.* at ¶ 29.)

ICE ran the information through the Central Index System database – a database containing information of persons having applied for immigration benefits and naturalization procedures. The search did not yield any results for the name "Ada Morales." (ECF No. 20-3 at ¶¶ 5-6.)   ICE then ran the name Ada Morales in the National Crime Information Center ("NCIC") database and it revealed an alias of "Ada Madrid" with two separate social security numbers. (*Id.* at ¶¶ 7-8.)

On Monday, May 4, 2009, ICE Agent Edward Donaghy prepared an immigration detainer – Notice of Action (Form I-247), informing the ACI staff that "an investigation has been initiated to determine whether [Ada Morales] is subject to removal from the United States." (ECF No. 4-2.)   Agent Donaghy faxed the immigration detainer to the ACI at 8:32 a.m. Monday morning. (ECF No. 4 ¶ 31.)   The detainer informed the ACI that "federal regulation (8 C.F.R. § 287.7) requires that you detain the alien for a period not to exceed 48 hours … to provide adequate time for DHS to assume custody of the alien." (*Id.* at ¶ 33.)

Prior to issuing the detainer, no one from ICE interviewed Ms. Morales to inquire whether she was a United States citizen or to request and/or verify her immigration status. (*Id.* at ¶ 37.)   Neither state nor federal officials informed Ms. Morales that the detainer issued. (*Id.* at ¶ 41.)

Monday afternoon, Ms. Morales appeared in Rhode Island Superior Court for an arraignment based on the state charges she faced. (*Id.* at ¶ 42.)   The state court withdrew the warrant and released Ms. Morales on $10,000 personal recognizance. (*Id.* at ¶ 43.)   The state

---

[3] ICE is the chief investigative arm of the United States Department of Homeland Security (DHS).

court informed Ms. Morales of an "immigration hold," mandating that she report to the Attorney General's office for "routine processing in this matter which will include fingerprinting." (*Id.* at ¶ 44.)  State officials then returned Ms. Morales to the ACI where, relying on the federal ICE detainer issued that morning, she remained in custody. (*Id.* at ¶ 46.)

At 4:20 p.m. on Monday, an ACI employee faxed ICE agent Greg Mercurio a notice stating: "Below is the name of an inmate [Ada Morales] who no longer has state charges pending.  An immigration detainer is the only document holding this inmate at the Department of Corrections.  Please contact the [ACI] with any information you may have pertaining to this inmate." (*Id.* at ¶ 50.)  No ICE official took action that day to investigate further, cancel the detainer, or give Ms. Morales an opportunity to be heard. (*Id.* at ¶ 52.)

In the meantime, Ms. Morales protested her detention and attempted to inform ACI officials that she was a United States citizen and that her husband could produce the documentation to prove it. (*Id.* at ¶ 49.)  While the State held her under the ICE detainer for the additional 24 hours, Ms. Morales alleges that ACI officials denied her medication, as well as harassed, taunted, and accused her of lying about her immigration status. (*Id.* at ¶¶ 54-56.)

The following day, Tuesday, May 5, 2009, after having spent an additional night at the ACI solely based on the ICE detainer, ICE took Ms. Morales into custody and transported her to its Rhode Island office. (*Id.* at ¶ 57.)  At the ICE office, five ICE agents interviewed Ms. Morales.  After multiple hours, ICE officials finally verified Ms. Morales' citizenship status and released her to her family. (*Id.* at ¶ 62.)

This was not the first time that ICE inappropriately detained Ms. Morales. Five years earlier, in July of 2004, ICE detained Ms. Morales on unsubstantiated allegations that she was a deportable alien.[4] (*Id.* at ¶ 12.)

## II.    PROCEDURE

Ms. Morales filed an Amended Complaint (ECF No. 4) and set forth eleven counts against various federal and state law enforcement officials.

- Counts I, II, and III are *Bivens*[5] claims asserting that the Federal Defendants violated her constitutional rights under the Fourth and Fifth Amendments. (*Id.* ¶¶ 101-110.)

- Counts IV, V, and VI[6] are § 1983 claims asserting the same constitutional violations (and includes the Fourteenth Amendment) against state defendant A.T. Wall. (*Id.* at ¶¶ 111-120.)

- Counts VII and VIII are state tort claims, asserting that the state inflicted personal injury on Ms. Morales by subjecting her to false arrest and imprisonment and that state officials were negligent. (*Id.* at ¶¶ 121-128.)

- Counts IX and X assert the same tort claims against the Federal Defendants under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671. (*Id.* at ¶¶ 129-138.)

- Lastly, Count XI seeks permanent injunctive relief barring ICE officials from unlawfully detaining her again. (*Id.* at ¶¶ 139-141.)[7]

---

[4] The Cranston Police Department arrested Ms. Morales in July 2004 at a local K-Mart on charges that were ultimately dismissed. Despite the fact that she was a United States citizen, ICE issued an immigration detainer indicating that she might be a non-citizen subject to removal, and local authorities responded by detaining her overnight. (ECF No. 4 at ¶ 12.)
[5] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[6] Ms. Morales has withdrawn Count VI of the Complaint (claims for Equal Protection violation against A.T. Wall.) (ECF No. 34-1 at 5, n.1.)

Defendants have responded to Ms. Morales' Complaint with motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), alleging that the Court does not have subject matter jurisdiction on the FTCA claim and that Ms. Morales has failed to state a claim upon which relief can be granted on the majority of the remaining claims. (ECF Nos. 17-21.) ICE Agent Edward Donaghy has also filed a Motion for Summary Judgment, asserting that qualified immunity shields him from suit. (ECF No. 20.)

The Court held a hearing on these motions and has carefully considered the excellent memoranda submitted by the parties, as well as the law and facts relating to the motion.

## III.   STANDARD OF REVIEW

### A.   Failure to State a Claim

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court will first discard bald assertions and conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Then the court must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 324 (1st Cir. 2008); *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). The Court cannot dismiss a "complaint [that] satisfies Rule 8(a)(2)'s requirement of a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ocasio–Hernández*, 640 F.3d at 11 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, a complaint satisfies what is required at the pleading stage if the court finds the complaint as a whole contains "enough detail to provide a defendant with 'fair notice of what the (…) claim is and the grounds upon which it rests.'" *Id.* at 12 (quoting *Bell*

---

[7] Pursuant to the recent First Circuit decision in *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 53 (1st Cir. 2013), Ms. Morales has withdrawn her request for retrospective declaratory relief against all defendants. (ECF No. 59 at 1.)

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The First Circuit has cautioned against "thinking of plausibility as a standard of likely success on the merits." *Sepúlveda–Villarini v. Dept. of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010). "For pleading purposes, circumstantial evidence often suffices to clarify 'a protean issue such as an actor's motive or intent.'" *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 56 (1st Cir. 2013) (quoting Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991)).

### B. Summary Judgment

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Asociacion de Periodistas de Puerto Rico v. Mueller*, 529 F.3d 52, 56 (1st Cir. 2008). Once the moving party has met its burden, the nonmoving party may only defeat the motion by "set[ting] forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, and present evidence sufficient to allow a reasonable jury to find in the nonmoving party's favor. *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 5 (1st Cir. 2012).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter but [must] determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the trial court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor as well. *Id.* at 255; *Franceschi v. U.S. Dept. of Veterans Affairs*, 514 F.3d 81, 84 (1st Cir. 2008). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary Judgment "hinges on the presence or absence of evidence,

not on the adequacy of the pleadings." *Garcia-Catalon v. United States*, 734 F.3d 100, 104 (1st Cir. 2013).

## IV.   ANALYSIS

Ms. Morales asserts that federal ICE officials and state prison officials violated her constitutional rights to liberty, due process, and equal protection and that they violated state common law.  In essence, her contentions can be set forth as follows:

### *Federal claims*

United States officials violated her constitutional rights including:

- her right to be free from illegal warrantless seizure;

- her right to due process by detaining her without notice and an opportunity to be heard and by falsely asserting in the detainer that compliance by the state was mandatory; and

- her right to equal protection of the laws because she was detained based on her national origin and she was treated differently than those similarly situated, to wit, non-Hispanic, non-foreign born individuals.

In addition to her constitutional claims, Ms. Morales asserts a claim under the Federal Tort Claims Act (FTCA) for negligent conduct by ICE officials in processing and executing the immigration detainer.

Finally, Ms. Morales seeks a prospective injunction prohibiting officials from issuing a detainer against her in the future or otherwise illegally detaining her.  (ECF No. 4 at 30.)

### *State claims*

Ms. Morales contends that the state violated her rights by adopting policies and procedures that imprison persons beyond the lawful time of their state-based detention for whom ICE issues an immigration detainer even if the detainer is not supported by probable cause.

(ECF No. 34-1 at 4-5.)  She further asserts that the state failed to provide any notice and an opportunity to be heard in violation of her constitutional due process rights.  (*Id.* at 5.)  Finally, she asserts that the state acted negligently toward her.

## A.    Federal Claims

The question before the Court is a narrow one.  The Court must decide only whether Ms. Morales has alleged a plausible claim of constitutional deprivation, assuming the facts contained in the Complaint as true, viewing them in the light most favorable to her, and drawing all inferences in her favor.  If the Court finds that Ms. Morales has validly stated any cognizable claims, it then must decide if qualified immunity protects Defendants as to any of the claims.

The Federal Defendants assert that Ms. Morales' constitutional claims against them (Counts 1, 2, and 3 under *Bivens*) should be dismissed against Defendants Gregory Mercurio, Bruce Chadbourne, and David Riccio[8] under Rule 12(b)(6) of the  Federal Rules of Civil Procedure.  In *Bivens*, the Supreme Court held that plaintiffs could bring a cause of action for damages against federal officers based upon violations of their constitutional rights.  403 U.S. 388 (1971).  This cause of action is the federal equivalent to § 1983 suits against state officials. *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011).  A plaintiff bringing a *Bivens* action "must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### 1.    *Fourth Amendment Violation Claim (Count I)*[9]

---

[8] The Federal Defendants concede that Ms. Morales has asserted a plausible claim that Defendant Edward Donaghy violated her Fourth Amendment rights and therefore do not move to dismiss that claim under Rule 12(b)(6) (ECF No. 17-1 at 14, n. 11) – though Mr. Donaghy does seek summary judgment against her on that claim.  (ECF No. 20.)

[9] Ms. Morales conceded that the "better framework for analyzing her claim is the Fourth Amendment," as opposed to her claim alleging a substantive due process violation under the Fifth Amendment.  (ECF No. 30-1 at 26.)

Ms. Morales claims that the Federal Defendants violated her Fourth Amendment constitutional right to be free from unreasonable seizure; that is, that she was illegally held by the state and subsequently ICE for a little more than 24 hours even after she posted bail set for the state charge. "The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975) (citing *Davis v. Mississippi*, 394 U.S. 721 (1969); *Terry v. Ohio*, 392 U.S. 1, 16-19 (1968)).[10]

Citing *Kerr v. California*, 374 U.S. 23, 34-35 (1963), Ms. Morales asserts that under the Fourth Amendment seizures must be either based on a warrant or supported by probable cause to believe that the person has committed the violation in question. . Because an ICE detainer is not a warrant, Ms. Morales argues, her seizure should have been supported by probable cause to pass constitutional muster. (ECF No. 30-1 at 22.) "[I]n order to issue a detainer . . . there must be probable cause to believe that the subject of the detainer is (1) an alien who (2) may not have been lawfully admitted to the United States or (3) otherwise is not lawfully present in the United States." *Galarza v. Szalczyk*, Civ. A. No. 10-CV-06815, 2012 WL 1080020, at *13 (E.D. Pa. Mar. 30, 2012) (quoting 8 U.S.C.A. § 1357(d)(1)).

One needs to look no further than the detainer itself to determine that there was no probable cause to support its issuance. The detainer specifically stated that Ms. Morales should be held solely because an investigation of her status in the United States had been initiated.

---

[10] "'There is a substantial body of law in support of the proposition that a plaintiff who alleges overdetention, sometimes even for very short period, states a claim for constitutional violations.'" *Holder v. Town of Newton*, 638 F. Supp. 2d 150, 153 (D.N.H. 2009) (quoting *Barnes v. District of Columbia*, 242 F.R.D. 113, 117 (D.D.C. 2007); *see e.g.*, *Berry v. Baca*, 379 F.3d 764, 768 (9th Cir. 2004); *Davis v. Hall*, 375 F.3d 703, 714 (8th Cir. 2004); *Lewis v. O'Grady*, 853 F.2d 1366, 1370 (7th Cir. 1988); and *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

(ECF No. 4-2.) The fact that an investigation had been initiated is not enough to establish probable cause because the Fourth Amendment does not permit seizures for mere investigations. *Arizona v. United States*, 132 S.Ct. 2492, 2509 (2012) ("Detaining individuals solely to verify their immigration status would raise constitutional concerns.") The Court therefore determines that Ms. Morales has appropriately alleged that there was no probable cause for the state or federal governments to detain her. Now, it turns to the individual Federal Defendants' conduct.

### a.  *Defendant Gregory Mercurio*

The Federal Defendants assert that Mr. Mercurio played no role in issuing the ICE detainer and therefore he cannot have "seized" Ms. Morales in violation of her Fourth Amendment rights. (ECF No. 17-1 at 14.) They claim that Ms. Morales merely alleges that Mr. Mercurio received a facsimile message from the ACI notifying ICE that the state was detaining Ms. Morales based only on the ICE detainer. The Federal Defendants assert that because the receipt of the facsimile does not necessarily give rise to any special duty to take action, there is no constitutional duty to investigate the basis for the detainer even if the Court were to interpret Ms. Morales' Complaint to allege such a duty.

Ms. Morales counters that once state officials informed Mr. Mercurio that the state was holding Ms. Morales on the ICE detainer alone, he chose not to investigate the matter or to take any actions to release her. (ECF No. 30-1 at 24-25.) Ms. Morales asserts that Mr. Mercurio was obligated to at the very least verify the basis for her detention and/or release a detainee when there was no apparent probable cause or other lawful justification for the detention. (*Id.* at 25.)

The only allegations against Mr. Mercurio in the Complaint are that he "received a facsimile message" from the ACI records unit notifying him that the ICE detainer was the only thing preventing her release and he failed to investigate the lawfulness of her detention. (ECF

No. 4 at ¶ 18.) The Complaint fails to allege what role or position he held with ICE – Mr. Mercurio could be anything from a summer intern clerk, to an IT specialist with little or no authority or responsibilities. It does not allege that Mr. Mercurio had any duty, authority, or ability to investigate or respond to this notice. Reading the Complaint in the light most favorable to Ms. Morales, one can at best assume that Mr. Mercurio was a passive actor who received a facsimile. Absent plausible factual allegations that Mr. Mercurio had a duty to act and acted illegally or that he had any authority over Ms. Morales' continued detention, the Complaint against Mr. Mercurio fails.

The Federal Defendants' Motion to Dismiss (ECF No. 19) all claims against Gregory Mercurio is GRANTED.

### b.     *Defendants Bruce Chadbourne and David Riccio*

Bruce Chadbourne was the Boston Field Office Director for ICE's Office of Enforcement and Removal Operations. (ECF No. 4 at ¶ 15.) David Riccio was the Resident-Agent-in-Charge of ICE's Rhode Island office. (*Id.* at ¶ 16.) Both had supervisory and training roles at ICE as well as responsibilities for setting policy as it relates to matters involved in this case.

Messrs. Chadbourne and Riccio assert that as supervisors they cannot be held liable for constitutional violations performed by their subordinates absent an affirmative link between the subordinates' act and some action or inaction by the supervisor. (ECF No. 17-1 at 15-16.) They assert that while Ms. Morales claims in her Complaint that Messrs. Chadbourne and Riccio "knew or should have known" that their subordinates "routinely issued detainers without probable cause" (ECF No. 4 at ¶ 81), she fails to set forth any specific factual allegations to support a plausible claim. (ECF No. 17-1 at 17.)

12

Ms. Morales counters that Messrs. Chadbourne and Riccio were responsible for agents under their supervision who regularly issued immigration detainers "without conducting sufficient investigation and without probable cause to believe that the subject of the immigration detainer was a non-citizen subject to removal and detention" (ECF No. 4 at ¶ 81) and to that end, "formulated, implemented, encouraged, or willfully ignored" policies "with deliberate indifference to the high risk of violating Ms. Morales's constitutional rights." (*Id.* at ¶ 84.)

Ms. Morales claims that she is not asserting liability based on *respondeat superior* but rather she alleges that Messrs. Chadbourne and Riccio, by their own acts, "have put in place or continued official policies and practices regarding issuance of ICE detainers" that violated Ms. Morales's Fourth Amendment rights. (ECF No. 30-1 at 25.)

This Court recognizes there are a variety of defendants with varying levels of involvement in this case.  The Supreme Court in *Iqbal* required the plaintiff to show that each government official against whom she brings a *Bivens* claim has violated the Constitution through her "own individual actions."  *Iqbal*, 556 U.S. at 676.   Additionally, First Circuit precedent also makes clear that merely alleging a defendant "participated in or directed the constitutional violations" or "knew of the violation[s] and failed to act to prevent them" "is plainly insufficient to support a theory of supervisory liability and fails as a matter of law." *Soto-Torres*, 654 F.3d at 159.

A plaintiff must allege facts that are sufficient to support the court's conclusion that the defendant was affirmatively involved; it is not enough simply to make conclusory allegations. *See Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 554-555).   Allegations that the supervisor "knew of, condoned, and willfully and maliciously agreed to subject" to, was the "principal architect" of the unconstitutional policy, etc. alone are not sufficient to establish

13

supervisory liability unless they are affirmatively supported in the plaintiff's complaint. *Iqbal*, 556 U.S. at 680-681. These sorts of individual allegations however should not be taken lightly merely because they are not in and of themselves sufficient to support a valid claim for supervisory liability; when made in combination with other factual, as opposed to legal assertions, they may become sufficient.

A supervisor may be held liable for the constitutional violations committed by his or her subordinates where "an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor' exists such that 'the supervisor's conduct led inexorably to the constitutional violation.'" *Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009) (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)). In order to establish an "affirmative link," the plaintiff must plead that the supervisor was affirmatively involved in the unconstitutional action. *Soto-Torres*, 654 F.3d at 160 (citing *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)). Furthermore, supervisor liability "may attach 'if a responsible official supervises, trains or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation.'" *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999). This is precisely what Ms. Morales has alleged in her Complaint against Messrs. Chadbourne and Riccio, to wit, that they supervised and trained subordinates with deliberate indifference to the constitutional rights of citizens like Ms. Morales. Thus, the Court will consider these allegations in light of the law on supervisory liability claims.

The First Circuit uses a two-pronged test to determine the adequacy of the factual support pled in supervisory liability claims. First, the Court throws out all allegations that are merely conclusory or threadbare. *Soto-Torres*, 654 F.3d at 158. If the allegations pass this first prong,

the Court then inquires whether "the facts alleged would 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 159 (quoting *Iqbal*, 556 U.S. at 678).

In this case, Ms. Morales has alleged plausible facts sufficient to support her claim against the two ICE supervisors.  First, her allegations are specific, not conclusory or threadbare. She alleges that Messrs. Chadbourne and Riccio are specifically responsible for the rules and regulations involved in this specific case ("activities in Rhode Island") that caused Ms. Morales' constitutional rights to be violated.  (ECF No. 4 at ¶ 15-16.)  Second, the facts in her complaint permit reasonable inferences to be drawn that these two individuals showed deliberate indifference and therefore are liable for the Fourth Amendment violations she alleges. Ms. Morales alleges that these two Defendants have "put in place or continued official policies and practices regarding issuances of detainers that directly and foreseeably caused" Ms. Morales' constitutional rights to be violated.  (ECF No. 30-1 at 6.)  She alleged that they knew or were deliberately indifferent to the fact that their subordinate agents "regularly . . . issued immigration detainer against individuals such as Ms. Morales, without conducting sufficient investigation and without probable cause."  (ECF No. 4 at ¶ 81.)  Finally, she alleged that "[t]hey formulated, implemented, encouraged, or willfully ignored these policies and customs with deliberate indifference to the high risk of violating Ms. Morales' constitutional rights under the Fourth . . . Amendment."  (*Id.* at ¶ 84.)

The allegations in this Complaint are not analogous to those conclusory allegations and "formulaic recitation of the elements" in *Iqbal*.  *Iqbal*, 556 U.S. at 681.  The allegations there were simply that Defendant Ashcroft "knew of, condoned, and willfully and maliciously agreed to" some allegedly unconstitutional department policies.  *Id.* at 680.  Ms. Morales' allegations

are specific and are directly linked to the conduct by these Defendants who caused her injuries. Because the Complaint contains "enough detail to provide a defendant with 'fair notice of what the (...) claim is and the grounds upon which it rests,'" *Ocasio–Hernández*, 640 F.3d at 12 (quoting *Twombly*, 550 U.S. at 555), Ms. Morales has adequately stated a claim that Messrs. Chadbourne and Riccio violated her Fourth Amendment rights.

### c.   *Qualified Immunity*

Now that the Court has determined that Ms. Morales has sufficiently pled her Fourth Amendment claim, the Court must consider Messrs. Bruce Chadbourne and David Riccio's motion to dismiss under qualified immunity.  (ECF No. 18.)[11]  Edward Donaghy moves for summary judgment on qualified immunity grounds as well.  (ECF No. 20.)

Qualified immunity is an affirmative defense shielding government actors from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Therefore, the court must give "deference to the objectively reasonable beliefs and actions of the defendants as to the constitutionality of their actions, even if the beliefs are mistaken." *Diaz-Bigio v. Santini*, 652 F.3d 45, 46 (1st Cir. 2011).  Qualified immunity exists because "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

When conducting a qualified immunity analysis, the First Circuit requires courts to determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a

---

[11] Gregory Mercurio moved to dismiss on the same ground (ECF No. 19) but this Court has already granted Mr. Mercurio's Motion to Dismiss. (*See* section IV.A.1.a.)

constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Maldonado*, 568 F.3d at 269.  This Court has already determined that Ms. Morales has asserted sufficiently plausible facts to establish a Fourth Amendment seizure violation by Messrs. Chadbourne and Riccio. (*See* section IV.A.1.b.)  Mr. Donaghy has conceded at this stage of the pleadings, that Ms. Morales has set forth similar plausible constitutional claims as to his actions. (*See* note 9.)  Thus, the first prong is satisfied as to these three individuals.  The question for the Court then turns on whether the constitutional rights alleged to have been violated were "clearly established" such that a reasonable person would have known.

Determining whether a right is "clearly established" requires the Court to consider two aspects: (1) "the clarity of the law at the time of the alleged civil rights violation" and (2) whether, on the facts of the case, "a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights." *Maldonado*, 568 F.3d at 269; *see also Walden v. Providence*, 596 F.3d 38, 52 (1st Cir. 2010).  "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (internal citations omitted).  The Supreme Court has looked at whether plaintiffs have noted either controlling authority or even persuasive authority to support that the right they allege was violated was clearly established at the time of the violation. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). However, merely alleging the violation of a right as old as the Constitution itself, without specifying how the conduct in question constitutes a violation of that right, would destroy the balance "'between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties,'" because such abstract allegations would

"mak[e] it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Creighton*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

Bruce Chadbourne and David Riccio argue that they cannot be held liable because the issuance of the immigration detainer lodged against Ms. Morales did not violate "clearly established" constitutional rights against an illegal seizure. (ECF No. 18-1 at 19-20.) Edward Donaghy makes a similar argument. (ECF No. 20-1 at 8-9, 18.)

On the first element, it is clearly established "that an ICE officer [does] not have the authority to detain or deport U.S. citizens." *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1281 (M.D. Ga. 2012). "[A]n ICE officer who actively participates in the detention and/or removal of a person who he knows to be a U.S. citizen, or upon minimal investigation would discover is a U.S. citizen, would be deemed to know that such conduct clearly denies that person liberty without due process of law. Consequently, any such officer would not be protected by qualified immunity. *Id.* at 1284 (M.D. Ga. 2012). It is also "clearly established that [a seizure] without arguable probable cause to believe that [an individual] was an alien in the United States illegally violated the Fourth Amendment." *Id.* at 1281.

In light of the Court's determination that Ms. Morales' Fourth Amendment rights were violated, the salient question becomes whether the law at the time Ms. Morales was detained provided Messrs. Chadbourne, Ricci, and Donaghy "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). It has long been established that "[d]etaining individuals solely to verify their immigration status would raise constitutional concerns." *Arizona v. United States*, 132 S. Ct. 2492, 2509 (2012); *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) ("A seizure that is justified

solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission").

Ms. Morales alleged plausible facts that as reasonable officials, Messrs. Chadbourne, Riccio, and Donaghy would not have believed it lawful to detain Ms. Morales to investigate or verify her immigration status without probable cause to believe that she was not a United States citizen. *Dunaway v. New York*, 442 U.S. 200, 216 (1979) ("[D]etention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest"). Therefore, upon reviewing the Complaint as a whole, and drawing all "infer[ences] from the cumulative power of the facts alleged in the complaint," *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 103 (1st Cir. 2013), the Court concludes that Ms. Morales has stated a claim against Messrs. Chadbourne, Riccio, Donaghy under the Fourth Amendment and that these Defendants are not immune from those claims.

The Federal Defendants' Motion to Dismiss (ECF Nos. 17 and 18) Count I against Bruce Chadbourne and David Riccio and Defendant Edward Donaghy's Motion for Summary Judgment (ECF No. 20) as to Count I are DENIED.

### 2.   *Procedural Due Process - Fifth Amendment (Count II)*

Ms. Morales alleges in Count II of her Complaint that the Federal Defendants failed to afford her notice and an opportunity to be heard before she was detained in violation of her procedural due process rights under the Fifth Amendment to the United States Constitution. She alleges ICE issued the detainer without notifying her or affording her a pre-deprivation hearing in violation of her Fifth Amendment rights. (ECF No. 30-1 at 28.) The Federal Defendants respond that they did not violate Ms. Morales' due process rights because she was not

constitutionally entitled to notice and an opportunity to be heard on a one-day detention order. (ECF No. 17-1 at 19.) They also claim that they are entitled to qualified immunity on Ms. Morales' procedural due process claim because the right to notice and an opportunity to be heard before the issuance of an ICE detainer was not a clearly established right at the time of her detention.

The United States Supreme Court has held that

> "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify." As such, federal courts have discretion to administer the components of the qualified immunity test in the order that they determine "will best facilitate the fair and efficient disposition of each case." Where the court can "quickly and easily decide that there was no violation of clearly established law," it need not "turn[ ] to the more difficult question [of] whether the relevant facts make out a constitutional question at all."

*Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 9 (1st Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 238-39 (2009)). Given the Court's discretion, it will first consider whether Ms. Morales' due process claim states a violation of clearly established law.

After a review of the law and regulations applicable in this case, the Court cannot say that the right to notice and an opportunity to be heard before an ICE detainer is issued was a clearly established right. Significantly, the federal regulation establishing the issuance of temporary detainers provides that a person can be held for up to 48 hours based on a detainer. 8 C.F.R. § 287.7(d). There is no provision in the regulation for notice and an opportunity to be heard before the issuance of a detainer.

Furthermore, the Court does not find that a reasonable ICE agent would have understood that this conduct in not affording her an opportunity to be heard would violate her rights. *See Galarza*, 2012 WL 1080020, at *17-18. Ms. Morales has pointed to no decision of any court that

finds that a right to notice or to be heard pre-detention exists before ICE issues a detainer.[12] Because the Court cannot conclude that the Federal Defendants violated a clearly established right in this regard, qualified immunity attaches to these defendants on the procedural due process claim.  Therefore, Bruce Chadbourne and David Riccio's Motion to Dismiss (ECF No. 17) Count II against them is GRANTED.

### 3.    *Equal Protection under the Fifth Amendment (Count III)*

Ms. Morales' equal protection claim (against Edward Donaghy only[13]) alleges that ICE officials impermissibly based their decision to issue a detainer solely on her place of birth and/or her Spanish surname.  (ECF No. 30-1 at 32.)  She alleges that Mr. Donaghy "assumed without sufficient legal cause that Ms. Morales was not a U.S. citizen and incorrectly listed Ms. Morales' 'nationality' as 'Guatemala[n]' in the detainer form.  ***   [H]e made this assumption based on her race, ethnicity, and/or national origin.  ***   Defendant Donaghy would not have assumed that Ms. Morales was an 'alien' without conducting further research had it not been for her race, ethnicity, and/or national origin."  (ECF No. 4 at ¶ 38.)  Ms. Morales' assertion is that she was treated differently than similarly situated U.S. citizens who are not Hispanic.[14]

The Federal Defendants assert that Ms. Morales has failed to allege sufficient facts to support a viable claim for equal protection because she has not alleged that Mr. Donaghy treated her differently from anyone who is similarly situated.  (ECF No. 17-1 at 20.)  He asserts that

---

[12] As previously stated, this Court will not decide the issue of whether such a right exists because the defense of qualified immunity absolves these Defendants from liability on this claim without having to decide the issue of the existence of an underlying right.

[13] Ms. Morales expressly withdrew her equal protection claims against Messrs. Chadbourne and Riccio.  ECF No. 30-1 at 32 n.13 and 31-1 at 6 n.1.  This Court granted Mr. Mercurio's motion to dismiss all claims against him.  (*See* above, Section IV.A.1.a.)

[14] Her alternate argument is that the Court should allow her to proceed at this stage because courts allow less stringent pleading requirements when the allegation involves the issue of a defendant's motivation or knowledge.  (ECF No. 30-1 at 33.)

"[b]irth abroad is a permissible factor in determining if an individual is an alien present without authorization in the United States." (*Id.* at 21) (citing *Walker v. Holder*, 589 F.3d 12, 18 (1st Cir. 2009)). Mr. Donaghy also claims that he is entitled to qualified immunity.

ICE investigated Ms. Morales simply because she was born in another country. Using Ms. Morales' nation of birth as a sole permissible basis for her loss of liberty does not pass constitutional muster. *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 135 (D. Conn 2010) (seizing a person "solely on the basis of race or national origin, … violate[s] clearly established constitutional rights."); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (finding that targeting a person based on their national origin violates the Equal Protection Clause). This is particularly true in light of the large number of current United States citizens that were born in another country. To hold otherwise would mean that the approximately 17 million foreign-born United States citizens (ECF No 30-1 at 35) could automatically be subject to detention and deprivation of their liberty rights. Such a large number of immediate suspects, based solely on their national origin, cannot be justified under the equal protection clause. Ms. Morales' Complaint plausibly supports the reasonable inference that her constitutional rights were violated when she was detained because of her national origin and that Mr. Donaghy acted with a discriminatory purpose. (ECF No. 4 at ¶ 38.) Mr. Donaghy had information in his possession, or readily available to him, that would have permitted him to verify Ms. Morales' status as a United States citizen before he issued the immigration detainer. *See e.g.*, *Galarza*, 2012 WL 1080020, at *15-17. Instead, he categorized Ms. Morales because she was foreign born and treated her differently than others based on this impermissible characteristic.

Furthermore, the Court finds that the law provided the Federal Defendants with a fair warning that the action taken was unconstitutional. Ms. Morales has sufficiently alleged that the

ICE officers acted with a discriminatory purpose. These constitutional principles are axioms that are not questionable or in doubt; they are and have been "clearly established," and thus the Federal Defendants are not entitled to qualified immunity.

For the same reasons set forth above, Mr. Donaghy's motion for summary judgment of Ms. Morales' claim of equal protection violation must also be denied. The Court finds, on the record before it, that there are genuine issues of material fact as to the allegations that Ms. Morales' right to equal protection of the law was violated and that Mr. Donaghy acted with the requisite discriminatory purpose and qualified immunity does not bar the claim at this stage.

The Federal Defendants' Motion to Dismiss (ECF No. 17) Count III of Ms. Morales's Complaint against Mr. Donaghy and his Motion for Summary Judgment (ECF No. 20) are DENIED.

### 4.   *FTCA Claims for Negligent Investigation, Training, and Supervision (Count X)*

The United States asserts that Ms. Morales' FTCA claim of negligent investigation, training and supervision "should be dismissed for want of subject-matter jurisdiction under the discretionary function exception of the FTCA because negligence claims do not fall within the jurisdictional grant provided by statute." (ECF No. 46 at 2.)[15] It asserts that because "ICE exercises discretion in deciding how to investigate, train, and supervise as part of its mission to enforce immigration laws," that the discretionary function exception to the FTCA requires this Court to dismiss that aspect of Ms. Morales' claim. (ECF No. 46 at 3.) The United States argues that the Court should exclude the additional allegations of negligent investigation, training, and

---

[15] The Federal Defendants do not assert the discretionary function exception as to Ms. Morales' FTCA claims other than her negligence claim. (ECF No. 46 at 2 n.2.)

supervision because those are discretionary and should be rejected under the discretionary function rule.

Ms. Morales responds that the FTCA specifically authorizes negligence claims against the United States based on federal government employees' conduct and therefore the discretionary function exception does not apply where, as here, the United States' argument rests solely on the untenable proposition that the government employees have the discretion to act negligently. (ECF No. 52-1 at 2.) Ms. Morales asserts that the federal employees' actions were not discretionary when one examines the specific conduct at issue in this case. Moreover, she argues that conduct that violates the United States Constitution falls outside the discretionary function exception.

"Viewed from 50,000 feet, virtually any action can be characterized as discretionary." *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009). In order to invoke the exception, the United States must establish that (1) the specific conduct at issue involves an element of judgment or choice; and (2) that the choice is susceptible to considerations of public policy. *Id.* Conduct that violates the Constitution, however, falls outside the discretionary function exception. *Id.* (citing *Castro v. United States*, 560 F.3d 381, 389 (5th Cir. 2009); *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 254-55 (1st Cir. 2003)).

In this case, as the Court examines Ms. Morales' allegations against the United States at ground level, the Court finds that many of her allegations do not involve discretionary activities at all and therefore are not subject to the exception. Ms. Morales alleges that the United States' agents acted unconstitutionally in their investigation, training, and supervision causing her unlawful detention without probable cause or due process. (ECF No. 4 at ¶¶ 15-16, 85.) Ms. Morales' Complaint specifically alleges negligent acts by various federal agents, including

24

Messrs. Chadbourne, Riccio, Donaghy, and John Doe ICE officials leading to her illegal detention. (ECF No. 4 at ¶¶ 135-138.) She alleges, "Defendant Donaghy issued a detainer against her without probable cause, and without sufficiently investigating whether she was in fact an alien subject to removal . . . and that Defendants Chadbourne and Riccio knew that their subordinates routinely issued detainers without probable cause . . . and without sufficiently investigating the immigration status of naturalized U.S. citizens." (ECF No. 52-1 at 2.)

Additionally, conduct that violates the United States Constitution falls outside the discretionary function exception. *Limone*, 579 F.3d at 101 (1st Cir. 2009) (the discretionary function exception does not "shield conduct that transgresses the Constitution.")

Because Ms. Morales has sufficiently plead a claim under the FTCA, Defendants' Motion to Dismiss (ECF No. 17) the FTCA claim is DENIED.

### 5.     *Standing to Seek Injunctive Relief (Count XI)*

The Federal Defendants also move to dismiss Ms. Morales' equitable claims alleging that she has no standing to bring them because she has "failed to establish that she will suffer real and immediate threat of future harm without the Court's intervention." (ECF No. 17-1 at 9.) Ms. Morales responds by pointing out that, in light of the fact that she was twice unlawfully detained based on flawed immigration detainers, and that an ICE agent told her "it could happen again in the future," she has met the threshold for alleging a plausible claim of a threat of future harm to satisfy the standing requirement. She seeks an injunction from this Court prohibiting the Federal Defendants from issuing any detainers against her in the future and the State Defendants from detaining her based on her immigration status. (ECF No. 4 at 30.)

In order to survive a motion to dismiss an injunctive claim based on the assertion of lack of standing, a party must set forth a plausible allegation that she is "realistically threatened by

repetition of [her] experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). "Even a small probability of injury is sufficient to create a case or controversy – to take a suit out of the category of hypothetical – provided of course that the relief sought would, if granted, reduce the probability." *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (quoting *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993).

Ms. Morales has standing to seek injunctive relief. In her Complaint, she sets forth plausible allegations that the threat of a repeat, unlawful detention is realistic. She is an American citizen who federal authorities have twice inappropriately detained on a detainer alleging immigration violations. (ECF No. 4 at ¶ 99.) ICE officials told her that this could happen to her again. (*Id.* at ¶¶ 4, 14.) She alleged that the state has a policy of reporting all arrestees with foreign births to ICE. (*Id.* at ¶¶ 66-69.) It is not difficult to understand why Ms. Morales fears being illegally detained again. Looking at the Complaint as a whole, her collective allegations plausibly plead that she could be detained again in the future and are sufficient to afford standing to assert her request for prospective injunctive relief in Count XI of the Complaint.[16]

The Federal Defendants' Motion to Dismiss (ECF No. 17) Count XI for prospective relief is DENIED.

**B.    Ashbel T. Wall's (State of Rhode Island) Motion to Dismiss (Counts IV – VIII)**

Ashbel T. Wall is Director of the Rhode Island Department of Corrections ("RIDOC"). He moves to dismiss the claims against him asserting that the RIDOC acted lawfully and legally

---

[16] Moreover, the Federal Defendants are incorrect when they assert that Ms. Morales must "establish" that she will suffer immediate harm. This matter is before the Court on a Motion to Dismiss where Ms. Morales' burden is not to establish immediate harm but rather to set forth plausible allegations of a realistic threat of immediate future harm.

in detaining Ms. Morales and he did not act unconstitutionally toward her.  Director Wall asserts the "RIDOC complied with the federal regulation [8 C.F.R. §287.7(d)] which *required* the RIDOC to detain Ms. Morales for up to 48 hours following her scheduled release." (ECF No. 21 at 9.)(emphasis added.)  He asserts that because Ms. Morales was detained based on a facially valid request to detain her from ICE then he bears no liability.  He further asserts that the state is not amenable to an action under 42 U.S.C. § 1983.

Ms. Morales claims that based solely on her national origin and Hispanic last name, and despite her assertion that she was a United States citizen, the RIDOC notified ICE that she was in state custody.  Once the RIDOC received a detainer from ICE for Ms. Morales, it both failed to recognize it as facially invalid and inappropriately treated it as mandatory.  The State's actions constituted an unlawful detention resulting from the "RIDOC's policy and practice of detaining anyone for whom ICE issues an immigration detainer, even if the detainer is patently unsupported by probable cause." (ECF No. 34-1 at 5.)  She seeks damages against Director Wall in his individual capacity and injunctive relief against him in his official capacity.  (*Id.*)

Ms. Morales asserts four counts[17] against the RIDOC Director Wall;

- Counts IV and V are based on 42 U.S.C. § 1983 and allege: (1) violation of her right to be free from illegal seizures under the Fourth and Fourteenth Amendments to the United States Constitution; and (2) violation of her right to due process under the Fifth and Fourteenth Amendments to the United State Constitution; and

- Counts VII and VIII are based on state law and assert false imprisonment and negligence.

---

[17] As previously noted, Ms. Morales has withdrawn her equal protection claim against A.T. Wall (Count VI). *See supra*, n.7.

This Court concludes that Ms. Morales has set forth plausible federal constitutional and state law claims against Defendant A.T. Wall to allow her to proceed against him in the litigation.

### 1.     *Illegal Seizure (Count IV)*

Ms. Morales asserts that the State violated her Fourth Amendment right to be free from illegal seizure when it detained her solely based on the ICE detainer.[18]  Director Wall asserts that the ICE detainer stated that he was required to detain Ms. Morales and that the detention was "based on a facially valid request to detain her." (ECF No. 21 at 8.)

"Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway*, 442 U.S. at 213.  Because the state court released Ms. Morales on bail, the RIDOC detention based on the ICE detainer constitutes a "new seizure" and must meet all of the Fourth Amendment requirements. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  In this case, a finding of probable cause would require specific "facts and circumstances sufficient to warrant a prudent [person] in believing" that Ms. Morales was a non-citizen who was subject to detention and removal. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  The only fact that the state had in deciding whether to detain Ms. Morales was that she was born in another country.  Certainly, that single factor is insufficient to warrant a prudent person to believe that she was in this country illegally.  As previously noted there are over 17 million United States citizens that were born in another country.[19]  (ECF No 30-1 at 35.)

Moreover, the information in the detainer itself should have led the RIDOC to believe that it was not facially valid or based on probable cause.  The detainer stated that Ms. Morales

---

[18] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Wolf v. Colorado*, 338 U.S. 25, 40 (1949).

[19] In addition, there are a large number of non-citizens born in other countries that are in the United States with proper documentation.

should be held based on an investigation that had been initiated, but detention for purposes of mere investigation is not permitted because it "raise[s] constitutional concerns." *Arizona v. United States*, 132 S.Ct. at 2509. Therefore, the Court finds that initiating an investigation and detaining an individual based solely on his/her national origin violates the United States Constitution.

As to Director Wall's argument that the RIDOC was required to detain Ms. Morales, the Court has already determined that the detention order was not valid on its face. Also, in making this argument, Director Wall analogizes this case to a detention based on a valid warrant, which the United States Supreme Court has ruled does not violate the Fourth Amendment. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). However, Director Wall's reliance on *Baker's* warrant is misplaced. Warrants are very different from detainers and there was no accompanying warrant in this case. *See e.g., Buquer v. Indianapolis*, 797 F. Supp. 2d 905, 911 (S.D. Ind. 2011) ("A detainer is not a criminal warrant, but rather a voluntary request that the law enforcement agency 'advise [DHS], prior to release of the alien, in order for [DHS] to arrange to assume custody.'"). The RIDOC was faced with a facially invalid request to detain Ms. Morales pending an investigation of her immigration status lodged solely based on her country of birth. Therefore, the Court finds that Ms. Morales' claim that the RIDOC illegally detained her in violation of the Fourth Amendment survives the State's motion to dismiss.

## 2. *Procedural Due Process (Count V)*

Ms. Morales asserts in her Complaint that the RIDOC violated her due process rights by detaining her without affording her procedural due process. (ECF No. 4 at ¶¶ 41, 49, 71, 87.) In essence, she maintains that she was entitled to notice and, at a minimum, an opportunity to be heard before the RIDOC detained her pursuant to an ICE detainer. Ms. Morales points out that

Director Wall failed to argue in his memorandum in support of his motion to dismiss the due process claims in her Complaint.  (ECF No. 34-1 at 5.)  This Court agrees that Director Wall failed to mount a challenge to Ms. Morales' due process claims at this stage and therefore has waived his argument.  However, the Court will briefly set forth below the reasons that it nevertheless concludes that Ms. Morales' due process claim against Director Wall survives the RIDOC's motion to dismiss.

A procedural due process claim will lie if an individual was deprived of a cognizable liberty (or property) interest without being afforded notice and an opportunity to be heard. *Roberts v. Maine*, 48 F.3d 1287, 1292 (1st Cir. 1995) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  "[T]he root requirement of the Due Process Clause [is] . . . that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citing *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)) (internal quotations omitted).  Pre-deprivation process may be required when the deprivation of a detainee's liberty interests is not "unpredictable" (*Zinerman v. Burch*, 494 U.S. 113, 136 (1990)) and if the government is in a "position to provide for predeprivation process." *Id.* at 141.

Ms. Morales alleges that she told the State she was a United States citizen, but the State did not give her an opportunity to produce readily available proof of that status or allow her to contest the detainer before detaining her.  She was deprived of a hearing due to the RIDOC's policy of treating ICE detainers as mandatory under all circumstances.  However, ICE detainers are not mandatory.  Federal regulations clearly label ICE detainers as "requests."  Subsection (d) of 8 C.F.R. § 287.7, titled "Temporary detention at Department request," comes only after subsection (a)'s "general" detainer definition as a "request." *See* 8 C.F.R. § 287.7(a) ("Detainers

in general. . . . The detainer is a *request* that such agency advise the Department, prior to release

of the alien, in order for the Department to arrange to assume custody . . . .") (emphasis added).

Courts agree – a detainer is "a request filed by a criminal justice agency with the institution in

which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the

agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44

(1993). The language of both the regulations and case law persuade the Court that detainers are

not mandatory and the RIDOC should not have reasonably concluded as such.

Ms. Morales argues that once Director Wall erroneously decided as a matter of policy

that ICE detainers should be treated as mandatory grounds for imprisonment, it was incumbent

on him to put due process protections in place to avoid erroneous deprivations of liberty. (ECF

No. 34-1 at 6.)   The Court agrees.   *Zinerman*, 494 U.S. at 129-30.   The State detained

Ms. Morales and then offered her no opportunity to contest the ICE detainer.  The Court finds,

based on the allegations in the Complaint, it was incumbent on the RIDOC at the very minimum

to have allowed Ms. Morales to produce her citizenship documentation.   Instead, the State

blindly complied with the detainer, even in spite of Ms. Morales' protestations that she was a

United States citizen, not subject to an ICE detainer.

### 3.    *State Law Claims (Counts VII and VIII)*

Ms. Morales asserts that Director Wall did not "specifically address Ms. Morales' claims

under Rhode Island law" in his Memorandum in Support of his Motion to Dismiss. (ECF No.

34-1 at 19.) She goes on to point out that the two state law claims – false arrest and negligence –

are valid tort claims in Rhode Island.  *See e.g., Dyson v. Pawtucket*, 670 A.2d 233, 239 (R.I.

1996); *Calhoun v. Providence*, 390 A.2d 350, 357 (R.I. 1978). Director Wall states in a footnote

in his reply that "because Ms. Morales was lawfully detained, all Counts against the RIDOC

31

must be dismissed." (ECF No. 43 at 1, n.1.) Because this Court has determined that Ms. Morales has alleged valid claims concerning the legality of her detention, then Director Wall's basis for seeking dismissal of the state claims must fail.[20]

Director Wall's Motion to Dismiss (ECF No. 21) is DENIED.

## V.   CONCLUSION

The United States Supreme Court recently reminded the nation of the significance of naturalized United States citizens like Ada Morales.

> Immigration policy shapes the destiny of the Nation. [A] dozen immigrants stood before the tattered flag that inspired Francis Scott Key to write the National Anthem. There they took the oath to become American citizens. [citation omitted.] These naturalization ceremonies bring together men and women of different origins who now share a common destiny. They swear a common oath to renounce fidelity to foreign princes, to defend the Constitution, and to bear arms on behalf of the country when required by law. 8 CFR § 337.1(a) (2012). The history of the United States is in part made of the stories, talents, and lasting contributions of those who crossed oceans and deserts to come here.

*Arizona v. United States*, 132 S. Ct. at 2510. According to the allegations in her Complaint, Ms. Morales is one of these Americans who was not treated as a citizen should have been treated.

In this case, Ms. Morales has set forth plausible allegations that she was unconstitutionally detained solely based on her national origin and Hispanic last name. She is entitled to press those claims against federal and state officials and to bring forth her evidence to prove them if she can.

In summary, the Court has dismissed:

1.   All claims against Defendant Gregory Mercurio; and

---

[20] Director Wall also asserts that this Court should dismiss Ms. Morales' Complaint because it violates Rule 8 of the Federal Rules of Civil Procedure. This Court disagrees. Ms. Morales' Complaint meets the requirement of Rule 8 as well as case law setting forth a plaintiff's pleading requirements.

2. Count II's claims of procedural due process violations against the Federal Defendants;

3. Count VI's claims for equal protection violation under § 1983 against Defendant A.T. Wall (withdrawn by Ms. Morales); and

4. All claims for retroactive injunctive relief (withdrawn by Ms. Morales).

The Court has ruled that Ms. Morales can proceed with the following claims:

1. Count I, alleging violation of her Fourth Amendment right against Federal Defendants Edward Donaghy, Bruce Chadbourne and David Riccio;

2. Count III, alleging Fifth Amendment equal protection claims against Federal Defendant Edward Donaghy;

3. Counts IV, V, VII and VIII, alleging § 1983 claims (on illegal seizure and procedural due process grounds) and all state law claims against State of Rhode Island Defendant A.T. Wall;

4. Counts IX and X claims under the FTCA against the United States of America; and

5. Count XI prospective injunctive relief against all remaining parties.

The Court DENIES IN PART AND GRANTS IN PART ECF No. 17, DENIES ECF Nos. 18, 20, and 21, and GRANTS ECF No. 19.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

February 12, 2014