## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **ADA MORALES** | : | |
| | : | |
| **v.** | : | **C.A. NO.: 12-301-M-DLM** |
| | : | |
| **BRUCE CHADBOURNE,** | : | |
| **DAVID RICCIO, EDWARD DONAGHY,** | : | |
| **GREG MERCURIO, ICE DOES 1-5,** | : | |
| **RHODE ISLAND DOES 1-10,** | : | |
| **ASHBEL T. WALL** | : | |

## MOTION FOR SUMMARY JUDGMENT ON
## CROSS-CLAIM FILED AGAINST THE UNITED STATES

Now comes Defendant, Ashbel T. Wall in his official and individual capacity as Director of the R.I. Department of Corrections ("Defendant," "RIDOC" or "Wall"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby affirmatively moves for Summary Judgment on the Cross-Claim he filed against the Co-Defendant, the United States.  In support, Wall submits the accompanying Memorandum of Law.

WHEREFORE, Defendant Wall respectfully requests that this Motion for Summary Judgment be granted.

DEFENDANT

Ashbel T. Wall, individually and in his
official capacity as Director of the Rhode
Island Department of Corrections

By his Attorney,

PETER F. KILMARTIN
ATTORNEY GENERAL

/s/ Adam J. Sholes_____
Adam J. Sholes, Esq. Bar No. 7204
Thomas A. Palombo, Bar No. 4212
Assistant Attorneys General
R.I. Department of Attorney General
150 South Main Street
Providence, RI 02903-2907
Tel.: (401) 274-4400, Extension 2219
ajsholes@riag.ri.gov

## CERTIFICATE OF SERVICE

I hereby certify that I filed the within Motion for Summary Judgment via the ECF filing
system and that a copy is available for viewing and downloading.  I have also caused a copy to
be sent via the ECF system to the following attorneys on this 22nd day of September, 2015.

/s/ Adam J. Sholes_____

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **ADA MORALES** | : | |
| | : | |
| **v.** | : | **C.A. NO.: 12-301-M-DLM** |
| | : | |
| **BRUCE CHADBOURNE,** | : | |
| **DAVID RICCIO, EDWARD DONAGHY,** | : | |
| **GREG MERCURIO, ICE DOES 1-5,** | : | |
| **RHODE ISLAND DOES 1-10,** | : | |
| **ASHBEL T. WALL** | : | |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This Memorandum of Law supports the Motion for Summary Judgment by Ashbel T. Wall in his official and individual capacity as Director of the R.I. Department of Corrections ("Defendant," "RIDOC" or "Wall"), pursuant to Rule 56 of the Federal Rules of Civil Procedure on the Cross-Claim filed against the Co-Defendant, the United States. For the reasons set forth herein, Wall asserts that he is entitled to judgment.

## PROCEDURAL HISTORY

For a more complete procedural history, Defendant Wall refers to his Memorandum filed in support of his motion for summary judgment on all claims filed by Plaintiff, Ada Morales ("Plaintiff" or "Morales"). Pertinent to this Motion, on February 24, 2014, Defendant Wall filed a Cross-Claim against the United States. ECF No. 71.[1] Defendant Wall denied any liability and sought contribution and/or indemnification from the United States as a result of honoring the immigration detainer issued by the Immigration Customs and Enforcement ("ICE") against Morales. Id.

---

[1] Defendant Wall also filed cross-claims against all of the other Federal Defendants. However, on June 3, 2015, the United States was substituted in their place. ECF No. 143.

In June 2015, pursuant to 28 U.S.C. 2679(d), the designee of the Attorney General for the United States certified that all of the named Federal Defendants in this case were acting within the scope of their employment.  On June 3, 2015, this Court accepted the certification from the Attorney General.  (ECF No. 143).

On July 17, 2015, the First Circuit issued a decision concerning an interlocutory appeal filed by the Defendants Donaghy, Riccio[2] and Chadbourne.  <u>Morales v. Chadbourne</u>, 793 F.3d 208 (1st Cir. 2015).  The appeal concerned the denial of qualified immunity asserted by the Federal Defendants before discovery commenced.  Director Wall did not assert qualified immunity as part of his motion to dismiss and was not a party to the appeal.  In relevant part, the First Circuit affirmed the denial of qualified immunity for the Federal Defendants.

<b><u>UNDISPUTED FACTS OF THE CASE</u></b>

Wall has filed the requisite Statement of Undisputed Facts ("SUF") pursuant to Local Rule 56, which sets forth the following:

1. On May 2, 2009, Morales was arrested by the Rhode Island State Police ("RISP") on the charge of obtaining money under false pretenses.  See Amended Complaint ¶26, Exhibit A: RISP Arrest Report.  During her deposition, Morales testified that a RISP trooper appeared at her house and took her into custody without telling her the reason.  Exhibit B: Deposition of Ada Morales, p. 19.  Morales denies that she was arrested following a traffic stop.  Id.

2. The RISP Arrest Report states:  "On May 2, 2009 at approximately 2:50 p.m. Trooper Ruggiero while on patrol of Douglas Ave in the City of Providence" pulled over Morales' vehicle for a traffic stop.  During the encounter, Trooper Ruggiero ran her name through the NCIC database and learned that "she had an active Superior Court bench warrant for FTA-Arraingment for UMUFP over $500."  The Trooper then advised Morales of the warrant and placed her under arrest.  She was transported to the Lincoln Barracks. Exhibit A: RISP Arrest Report.

3. Within a matter of hours, Morales was transported from the RISP Lincoln Barracks to the RIDOC in Cranston, RI.  According to RIDOC's INFACTS database, Morales was

---

[2] Subsequently, Defendant Riccio was dismissed from this case by stipulation of the parties. ECF No. 150.

2

committed to RIDOC sometime around 4:42 p.m. on May 2, 2009.  Exhibit C: INFACTS printout 0018.

4.     Upon arrival at RIDOC, staff from the ID unit began the commitment process for Morales.  As part of this process, Morales would have been asked questions such as her address, emergency contact information, race, eye color, hair color, nativity (place of birth) and social security number.  In addition, her weight, height measurements and a photograph would be taken.  Exhibit D: Deposition of Captain Kathleen Lyons, March 5, 2015, p. 21-40.

5.     Although RIDOC expected that all detainees would be asked, upon commitment, whether they claim to be a U.S. citizen, it was not required to complete the booking process. Exhibit D: Deposition of Captain Kathleen Lyons, March 5, 2015, p. 35; Exhibit E: Response for Request for Admissions Nos. 1-4.

6.     An answer for nativity (place of birth) is required to be entered into the INFACTS database by a member of RIDOC staff in order for the commitment process to move forward.  An answer to U.S. citizenship is not required for the commitment process to continue.  Exhibit D: Deposition of Captain Kathleen Lyons, March 5, 2015, pgs. 31, 35; Exhibit E: Request for Admissions Nos. 1-4.

7.     RIDOC does not verify a person's citizenship or nativity.  Exhibit D: Deposition of Captain Kathleen Lyons, March 5, 2015, pgs. 38-39.

8.     Morales testified that, upon commitment, she was asked her nativity and citizenship.  Her responses were that she was born in Guatemala and was a U.S. citizen.  Exhibit B: Deposition of Ada Morales pg. 26.

9.     The INFACTS database for Morales indicates on that, on May 2, 2009, the "field" entitled U.S. citizen was left blank or null.  Exhibit F: Deposition of Michelle Lanciaux, p. 101.

10.    Although ICE Agent Edward Donaghy ("Donaghy") has no independent recollection of what occurred on Monday May 4, 2009, it was his custom to report to work at around 6 a.m. to begin to search the daily commitment lists for newly committed persons at RIDOC.  Exhibit G: Deposition of Edward Donaghy, p. 96-97.  As a law enforcement agency, ICE had access to RIDOC's INFACTS database and was able to run reports on its own.  Id. 101-102.

11.    After retrieving the daily commitment report, Donaghy reviewed the INFACTS database to determine whether each individual on the commitment list claimed to be foreign born and/or a U.S. citizen.  Exhibit G: Deposition of Donaghy, p. 125-126.  If Donaghy believed U.S. citizenship was in question after his initial search through the INFACTS database, Donaghy would run that person's name through two Federal databases, CIS and NCIC, to determine whether that person was a citizen or permanent lawful resident.  Id.

3

at 127-128, 137-138.   Donaghy did not rely solely on INFACTS before issuing a detainer.  Id. at 266.

12.    Donaghy would only issue immigration detainers when he believed he had probable cause.  Donaghy had never issued a detainer with less than probable cause.  Exhibit G: Deposition of Donaghy, p. 192.

13.    On Monday May 4, 2009, at approximately 8:32 a.m., RIDOC received an immigration detainer issued by Donaghy.  See Amended Complaint ¶31; Exhibit H: Detainer.

14.    After issuing a detainer, Donaghy expected that the RIDOC would honor the detainer. Exhibit G: Deposition of Donaghy, p. 261.

15.    Donaghy did not expect the RIDOC to conduct any further independent investigation with respect to the detainer.  Exhibit G: Deposition of Donaghy, p. 261-262.

16.    The immigration detainer "form" informed RIDOC that Federal regulations "require" RIDOC to detain Morales for a period not to exceed 48 hours.  Exhibit H: Detainer.

17.    Subsequent to receiving the immigration detainer, on May 4, 2009, Morales was brought before the Superior Court for a bail hearing.  Morales appeared shortly before noon. Exhibit B: Deposition of Ada Morales, p. 40-41.

18.    At the Court hearing, Superior Court Magistrate Patricia Harwood granted bail in the form of $10,000 personal recognizance.  Exhibit I: Transcript from May 4, 2009 hearing. Judge Harwood, however, indicated to Morales that she would not be allowed to leave because of an immigration hold.  Id.  Morales protested to the judge and claimed to be a U.S. citizen.  Exhibit B: Deposition of Ada Morales, p. 45-46.  Morales' husband was in the courtroom holding Ms. Morales' passport in plain view for all to see.  Id.  The attorney for Morales was aware that she was being held solely on an immigration detainer and told her that "there's nothing I can do."  Id. at 47.

19.    At no time on May 4, 2009 did the Magistrate Judge Harwood order that Morales be unrestrained.   Exhibit B: Deposition of Ada Morales, p. 44.  Morales was eventually brought back to the holding cell within the courthouse and was there "for a while" before being transported back to the ACI.  Id. at 48.

20.    After the court hearing, Morales' husband, Hugo Morales, contacted another attorney to attempt to clear up the immigration issue.  In addition, Mr. Morales unsuccessfully attempted to contact immigration officials.  Exhibit B: Deposition of Ada Morales, p. 47-48.   At no time did Mr. Morales contact RIDOC or appear at the RIDOC with documentation indicating that Ms. Morales was a U.S. citizen.  Id. at 78.

21.    Sometime during the afternoon on Monday, May 4, 2009, the Rhode Island Sheriff's Department transported Morales back to the RIDOC.  Exhibit J: Deposition of Captain Kathleen Lyons, April 8, 2015, p. 59-60; Exhibit B: Deposition of Ada Morales, p. 49.

22.    On May 4, 2009, after being transported back to RIDOC by the Sheriff's Department, RIDOC attempted to contact ICE to ascertain the status of the immigration detainer. Because ICE's office closed at 4 p.m., RIDOC did not hear back from ICE that day. Exhibit K: Fax to ICE.

23.    As a sole result of the detainer, Morales was held at the RIDOC from Monday afternoon until ICE picked her up on Tuesday morning.   See Amended Complaint ¶63.

24.    On Tuesday May 5, 2009, at approximately 10:00 a.m. ICE picked up Morales from the RIDOC.  Exhibit B: Deposition of Ada Morales, p. 55.

25.    After being questioned by ICE agents at the ICE facility, Morales was released from its custody.  Exhibit B: Deposition of Ada Morales, p. 93-95.

26.    Morales had previously been detained on an immigration detainer in 2004 when she was held by the City of Cranston.  RIDOC had no involvement with the 2004 detention. Exhibit B: Deposition of Ada Morales, p, 13-15.

27.    For at least 30 years before July 2014, RIDOC practice was to honor all immigration detainers.  RIDOC did not have a written policy with respect to this practice.  Exhibit L: Supplemental Answer to Interrogatory to No. 2.

28.    Director Wall was appointed Director of RIDOC in April 2000.  The practice to honor all ICE detainers predated his appointment.   Exhibit L: Supplemental Answer to Interrogatory No. 2.

29.    Prior to May 4, 2009, Director Wall believed that RIDOC's practice of honoring all detainers was constitutional.  Exhibit M: Deposition of Director Wall, p. 31.  Director Wall testified that as of May 4, 2009 he understood that it was his Department's obligation to honor all immigration detainers.  Id.  In addition, Director Wall believed that whether a detainer was properly issued was beyond RIDOC's control.  Id. at 34.

30.    Director Wall testified that prior to May 2009, this issue of whether an immigration detainer was mandatory or voluntary had not been brought to his attention.  Exhibit M: Deposition of Director Wall, p. 94.  At some point after Governor Chafee began his term in 2011, Director Wall recalls being approached by advocates who lobbied for RIDOC not to honor detainers.  Id. at 80-81.  Director Wall responded that he thought this issue was "bigger than [RIDOC]" and that this policy would have to be set at a higher level than himself.  Id. at 92-93.  Director Wall recalls at that time he spoke with legal counsel at RIDOC and he was told that RIDOC policy was "lawful."  Id. at 96.

31.    After this Court's decision in February 2014, Director Wall contacted the Governor's Office to discuss RIDOC's practice concerning detainers.  Exhibit M: Deposition of Director Wall, p. 99.  On July 16, 2014, the Governor issued a written policy regarding immigration detainers.  In sum, per the policy, RIDOC will only honor detainers that

have been ordered by a judge.  Exhibit N: Governor's Order; Exhibit M: Deposition of Director Wall, p. 100

32.     When meeting with the Governor, Director Wall agreed that the policy should be changed.  For Director Wall, "a compelling reason…was that I learned this document from the Department of Homeland Security didn't have the weight that it purported to have.  What I was told was a requirement was not enforceable, and I had not been informed beforehand that that was the case."  Exhibit M: Deposition of Director Wall, p. 102.

33.     Director Wall explained that he believed the detainer was a Federal mandate to hold a person.  The reason for his belief was "[w]hen I see the language 'federal regulations' and there's a citation to them and then the word 'require,' that's what I conclude, that that's pretty forceful language in an official document.  We're not going to thumb our nose at it."  Exhibit M: Deposition of Director Wall, pg. 108.

34.     Bruce Chadbourne ("Chadbourne"), the Field Director Officer ("FDO") in 2009 was responsible for all ICE units within the Boston Field Office.  The Boston Field Office consisted of all six New England states.  Exhibit O: Deposition of Chadbourne, p. 11-12.

35.     Chadbourne testified that, as of May 2009, although he did not believe immigration detainers required a law enforcement agency to detain an individual, every law enforcement agency in New England that was issued a detainer honored the detainer.  Exhibit O: Deposition of Chadbourne, p. 89-91.  Chadbourne believes that two agencies, namely the Chelsea Police Department and a western Massachusetts prison facility had concerns about whether detainers were enforceable.  However, as of May 2009, no law enforcement agency in New England refused to honor detainers.   Deposition of Chadbourne, pgs. 88-90.  It would be "rare" for a law enforcement agency to refuse to honor a detainer.  Id. at 40-41.

36.     Chadbourne also testified that he did not expect RIDOC to take any further action or investigation after receiving the detainer from ICE.   Exhibit O: Deposition of Chadbourne, p. 91-92.

37.     John Drane ("Drane"), the Supervisory Detention and Deportation Officer ("SDDO") for the Providence sub-office of ICE, testified that he believed in May 2009 that RIDOC was expected to honor immigration detainers.  Exhibit P: Deposition of Drane, p. 49-50, 179.

38.     According to Drane, as 2009, no law enforcement agency had refused to honor immigration detainers or asked for additional information from ICE regarding detainers.  Exhibit P: Deposition of Drane, p. 49.   Drane would be "surprised" if a local law enforcement agency asked for additional information about an individual.  Id.

39.     Drane also testified that it was not part of RIDOC's job to ask a person about their immigration status.  Exhibit P: Deposition of Drane, p. 104.

40.     Although individuals often claim to be U.S. citizens when they are not, it was rare for a detainer to be issued on a U.S. citizen.  Exhibit P: Deposition of Drane, p. 121-122; Exhibit O: Deposition of Chadbourne, p. 49-52.

41.     The detainer issued for Plaintiff Morales was a standard form used nationwide.   Exhibit O: Deposition of Chadbourne, p. 87-88; Exhibit P: Deposition of Drane, p. 180.

## LEGAL STANDARD

In order to grant summary judgment, the Court must find that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009). The initial burden is on the moving party to show the absence of genuine issues of material fact, after which "the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Ingram v. Brink's, Inc., 414 F.3d 222, 228–29 (1st Cir. 2005).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008).  A material fact "has the potential of determining the outcome of the litigation."  Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008).

## ARGUMENT

1.     **The United States is responsible for the consequences of issuing an immigration detainer against a naturalized U.S. Citizen.**

i.     The Federal Tort Claims Act allows for the cross-claim filed by Director Wall.

As a sovereign nation, the United States is open to tort liability only insofar as it consents to be sued.  See Nieves–Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013).  To this end, "[t]he [Federal Tort Claims Act] FTCA comprises a limited waiver of federal sovereign immunity, which allows the government to be held liable for certain tortious acts and omissions." Id.  The FTCA mandates that an inquiring court must look to "the law of the place where the act

7

or omission occurred" when making a liability determination. 28 U.S.C. § 1346(b)(1). Moreover, the FTCA explicitly permits claims for false imprisonment to be brought against the United States based on the acts of federal law enforcement agents, see 28 U.S.C. § 2680(h) (waiving sovereign immunity for claims against "investigative or law enforcement officers of the United States Government ... arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution").[3]  The FTCA specifically authorizes suits against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government."  28 U.S.C. §1346(b)(1).

Respectfully, Director Wall's cross-claim is not barred by the FTCA's discretionary function exception, 28 U.S.C. § 2680(a).  To properly invoke that exception, the United States must show (1) that the specific conduct at issue involves an element of judgment or choice, and (2) that the choice is susceptible to considerations of public policy. See Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); Limone v. United States, 579 F.3d 79, 101 (1st Cir. 2009). Moreover, conduct that violates the United States Constitution falls outside of the discretionary exception. Limone, 579 F.3d at 101.

Even more, the FTCA specifically provides a waiver of sovereign immunity with respect to the "acts or omissions of investigative or law enforcement officers of the United States Government," 28 U.S.C. § 2680(h), and courts have repeatedly held that investigatory conduct can give rise to FTCA liability. See, e.g., Nurse v. United States, 226 F.3d 996, 1002-03 (9th Cir. 2000) (holding that plaintiff stated negligence claim under the FTCA based on alleged illegal searches by federal customs agents); Raz v.United States, 343 F.3d 945, 948 (8th Cir. 2003)

---

[3]In addition to Section 1983 claims against Director Wall individually, Count VII and VIII of the Amended Complaint allege false imprisonment and negligence claims against Director Wall in his official and individual capacity.  (Complaint ¶¶121-128).

(holding that "the FBI's alleged surveillance activities fall outside the FTCA's discretionary-function exception" and that plaintiff had stated a claim under the FTCA); al-Kidd v. Gonzales, No. 05-093, 2012 WL 4470782 (D. Id. Sept. 27, 2012) (slip op.) (granting summary judgment to plaintiff on FTCA false imprisonment claim, and denying summary judgment to United States on FTCA abuse of process claim, where FBI agents engaged in investigatory detention of material witness); El Badrawi v. United States, 787 F. Supp. 2d 204, 229-30 (D. Conn. 2011) (granting summary judgment to plaintiff on FTCA false imprisonment claim where ICE officials detained him to investigate him after he had been granted voluntary departure).

ii.     The United States is liable for the detention of Morales.

In the recent First Circuit decision that affirmed the denial of qualified immunity for the Federal Defendants, our Courts of Appeals noted that the immigration detainer in this case "instructed" the RIDOC to hold Morales for up to 48 hours.  Morales, 793 F.3d 214, 218.  The First Circuit held that detainers can only be issued with probable cause and it was clearly established in 2009 that an ICE agent would understand that a detainer could only be issued with probable cause.  Id. at 215.  The First Circuit further noted that "it was clearly established that a law enforcement officer is 'responsible for the natural consequences of his actions.'"  Id. at 217 (quoting Malley v. Briggs, 475 U.S. 335, 344 n. 7 (1986); Monroe v. Pape, 365 U.S. 167, 187 (1961)).  The First Circuit went on to hold that "[t]he natural consequences of Donaghy issuing the detainer was that Morales would be detained for up to 48 hours.  Donaghy cannot argue otherwise.  The detainer he issued, on its face, instructed ACI officials to [detain Morales] for a period not to exceed 48 hours."  Id. at 218.

The United States has acknowledged that Donaghy was acting within the scope of his employment when he issued the detainer for Morales.  ECF No. 142.  In relevant part, pursuant

to 28 U.S.C. 2679(d), the Attorney General for the United States has certified to this Court that all of the named Federal Defendants in this case were acting within the scope of their employment.  As such, the United States has conceded that it is responsible for the wrongful acts or negligence of its employees in accordance with the FTCA.

Here, Agent Donaghy issued a detainer that "instructed" RIDOC to hold Morales for up to 48 hours.  As the First Circuit concluded, Donaghy knew that as a result of the detainer Morales would be held for up to 48 hours without any further investigation by RIDOC. Moreover, it was clearly established in 2009 that a detainer could only be issued with probable cause.  Lastly, RIDOC informed ICE on May 4, 2009 that RIDOC was only holding Morales as a result of the detainer lodged by ICE.  SUF ¶ 21.  ICE did not respond until the next day when it arrived at RIDOC to transport Morales to an ICE facility for questioning.  Because RIDOC only followed an instruction, which it believed at the time was a legal requirement and issued with the requisite probable cause; this Court should enter Judgment in favor of Director Wall on the Cross-Claim filed against the United States.

Regardless of whether the detainer required RIDOC to hold Morales or simply requested RIDOC to hold her, the United States is responsible for the natural consequences of its employee when Donaghy decided to issue a detainer for an individual that he believed to be in the United States illegally.  In addition, the detainer on its face "instructed" RIDOC to hold Morales for up to 48 hours.  The natural consequence of Donaghy's actions resulted in Morales being detained. The United States has conceded on multiple occasions that it expected the RIDOC to honor detainer *and* did not expect RIDOC to investigate the propriety of the detainer.  SUF ¶¶ 13-14, 35-38; ECF No. 29.  As such, in the event Morales prevails against Director Wall in his official

or individual capacity, the United States is solely responsible for Morales' detention and should be required to pay any judgment, costs, interest and attorneys fees.

## CONCLUSION

This Honorable Court should grant summary judgment in favor of Defendant Wall. RIDOC followed an instruction by a Federal agency to hold Morales for up to 48 hours. Moreover, the ICE Agent was acting within the scope of his employment when he issued this instruction. The United States is responsible for any liability from Morales' detention solely on the detainer. Therefore, Defendant Wall in his capacity as RIDOC Director and in his individual capacity, respectfully requests that his Motion for Summary Judgment on his Cross-Claim against the United States is granted.

DEFENDANT

Ashbel T. Wall, individually and in his
official capacity as Director of the Rhode
Island Department of Corrections

By his Attorney,

PETER F. KILMARTIN
ATTORNEY GENERAL

/s/ Adam J. Sholes_____
Adam J. Sholes, Esq. Bar No. 7204
Thomas A. Palombo, Bar No. 4212
Assistant Attorneys General
R.I. Department of Attorney General
150 South Main Street
Providence, RI 02903-2907
Tel.: (401) 274-4400, Extension 2219
ajsholes@riag.ri.gov

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the within Memorandum in Support of Summary Judgment via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF system to the following attorneys on this 22nd day of September, 2015.

/s/ Adam J. Sholes_____